589 So.2d 939 (1991)
Beverly F. STORY, Appellant,
v.
STATE of Florida, Appellee.
No. 89-00782.
District Court of Appeal of Florida, Second District.
October 9, 1991.
Rehearing Denied December 2, 1991.
*940 Robert L. Doyel of Doyel & McKinley, Bartow, for appellants.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Anne Y. Swing, Asst. Atty. Gen., Tampa, for appellee.
SCHEB, Acting Chief Judge.
Appellant Beverly F. Story was convicted of violating one count of the Racketeer Influenced and Corrupt Organization Act,[1] five counts of grand theft,[2] and one count of maintaining false citrus records for a citrus bond.[3] The theft charges were the predicate offenses for the RICO count. The court sentenced Mrs. Story to six years in prison on the RICO count, followed by ten years' probation on the grand theft counts and one year probation on the false records count, all probation to run concurrently. Additionally, the court required Mrs. Story to make certain payments in restitution.
On appeal, Mrs. Story raises seven points relating to her convictions. We have examined each and find merit in only one. She argues the court erred in granting the state's motion in limine, which effectively precluded her from introducing relevant evidence of crimes committed against her by her employees, Messrs. Roy Cato and Jimmy Wilson. This evidence, she asserts, tends to show her lack of criminal intent to commit grand theft, a specific intent crime. We agree and reverse.
The charges against Mrs. Story arose from transactions she made, as president and operating head of Jack T. Story, Inc., on behalf of the corporation with several fruit companies and individuals during the 1986/87 fruit season. There was substantial, competent evidence presented at the jury trial that she, in the name of the corporation, purchased crops from several citrus groves during the 1986/87 fruit season. She then, in the corporation's name, signed a number of contracts with various fruit buyers. Usually, on either the reverse of or attached to these contracts, the specific groves were listed to designate *941 those from which the purchaser's fruit would be harvested. Following those transactions, Mrs. Story, frequently upon the advice of either Mr. Wilson or Mr. Cato, entered into contracts on behalf of the corporation with other fruit buyers, which included sales of the same groves of fruit that the corporation had previously contracted out. As a result, the corporation, through Mrs. Story, conducted multiple sales of its fruit from the same groves and consequently failed to deliver a substantial number of boxes of fruit to the subsequent buyers. These transactions form the subject of the RICO and grand theft counts.
The issue of Mrs. Story's intent in committing the RICO and grand theft violations was a central focus at the trial. Although the circumstantial evidence presented raises some question as to whether she possessed specific intent to deprive the victims of their money or citrus crop, we think the jury, based on the evidence, could have inferred she did. In a cogent analysis of Mrs. Story's intent, the trial judge, outside the presence of the jury, observed:
[I]f you're Sui Juris and can read English and you sign a contract and the law infers the knowledge of that contract and it produces multiple sales for fruit you can't deliver, then the jury can decide what reasonable inferences they want to draw from that.
.....
You have promised to do things you can't do. And you have taken money in part payment as consideration for those contracts that you have signed to do things that you can't do.
What we find troubling is that the trial court, based on the state's motion in limine, excluded from evidence any reference to facts and circumstances surrounding the frauds Mr. Cato and Mr. Wilson perpetrated against the corporation. Specifically, the jury was deprived of hearing that Mr. Cato, on or about April 20, 1986, and Mr. Wilson, on or about August 27, 1986, sold to the corporation, through Mrs. Story, fictitious groves of fruit, thereby appropriating approximately $32,000 in cash from the corporation.
The defense argues that the excluded evidence should have been admitted on a "reverse Williams rule" basis. [Williams v. State, 110 So.2d 654 (Fla. 1959).][4] However, we find it unnecessary to adopt that nomenclature. We think the crucial question is whether references to the frauds that Mr. Wilson and Mr. Cato perpetrated against Mrs. Story constitute relevant evidence which should have been admitted. Section 90.402, Florida Statutes (1985), states all relevant evidence is admissible, except as provided by law. Section 90.401, Florida Statutes (1985), defines relevant evidence as "tending to prove or disprove a material fact." Thus, if Mr. Cato's and Mr. Wilson's frauds tend to, in any way, establish Mrs. Story lacked specific intent to commit the crimes of theft, the court erred in excluding any reference to them. Of course, even relevant evidence is inadmissible if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or needless presentation of cumulative evidence." § 90.403, Fla. Stat. (1985).
In making this determination, we first examine the corporation's employment infrastructure and Mr. Wilson's and Mr. Cato's relationship with Mrs. Story and the corporation. The evidence revealed that Mrs. Story was an experienced business person, having taken over full management of the corporation after her husband's demise several years before the events in this case. She had kept the corporation's books in the early years of her marriage. And while she was inexperienced in field work, she was experienced in employing agents. On occasion she negotiated contracts to buy and sell fruit. Mr. Wilson managed the field operations for Mrs. Story during much of the 1985/86 and 1986/87 fruit seasons. He purchased crops from groves, showed groves to buyers and conducted sales negotiations on behalf of the corporation. Mr. Cato was a fruit buyer for the corporation until he left in May 1986 to *942 form Sun-Sweet, a citrus company. Mr. Wilson left the corporation in October 1986 to join Mr. Cato at Sun-Sweet. Mr. Cato and Mr. Wilson negotiated contracts to buy and sell fruit for the corporation, and Mrs. Story handled the checkbook. Oftentimes she allowed both men to carry blank checks signed by her, so they could efficiently contract and draw checks payable to growers.
The defense sought to show that allowing the evidence of the two fraudulent contracts, which victimized Mrs. Story, assists in establishing that she lacked criminal intent in her dealings with the various fruit companies. Considerable evidence supported Mrs. Story's testimony that she conducted her transactions largely in reliance on Mr. Wilson's and Mr. Cato's representations. Mrs. Story asserted that most of the contracts which she entered into on behalf of the corporation with the victims were negotiated by Mr. Wilson or Mr. Cato, approved of upon their recommendation and entered into in their presence. Mrs. Story's assertions were corroborated by both state and defense witnesses. Mrs. Story claimed that she relied upon these employees in signing the various fruit selling contracts, forming the present charges. Therefore, the jury should have been allowed to hear specific instances relating to her misguided reliance in entering into contracts upon their recommendation. These instances may bear on her intent and knowledge in entering into the contracts at issue. Accordingly, they were relevant and wrongfully excluded from evidence.
We realize that during Mrs. Story's testimony, the jury heard she relied on Messrs. Cato and Wilson in many respects and that she trusted them with blank checks. Mrs. Story related that none of her employees had been honest with her. She said that even after Mr. Wilson left her employment in October 1986 to go with Sun-Sweet, she knew he was stealing fruit, but she had to let him keep hauling and picking under her arrangement with Sun-Sweet. Further, there was evidence Mrs. Story learned from an investigator she hired to monitor fruit picking that Mr. Wilson was stealing from her. We point out, however, that even the aggregate effect of this evidence did not fully elucidate the extent to which Mrs. Story relied upon Mr. Cato and Mr. Wilson nor the wrongfulness of her employees' activities.
The state posits it was sufficient that the court offered to permit limited evidence of the incidents to show ignorance or trust, but that specifics of the frauds would confuse the issue or mislead the jury. The record reflects that the court agreed to allow Mrs. Story to say that on faith she accepted two contracts and that they turned out to be fraudulent. The judge, however, limited the extent of her testimony by ruling:
So we don't go into the personalities, we don't go into the groves, we don't go into the transactions, we don't go into anything.
We think the court's limited parameters of admissibility were inadequate. In Rivera v. State, the supreme court emphasized that where relevant evidence tends in any way, even indirectly, to establish a reasonable doubt of defendant's guilt, it is error to deny its admission. Accord State v. Savino, 567 So.2d 892, 893 (Fla. 1990); Moreno v. State, 418 So.2d 1223, 1225 (Fla. 3d DCA 1982). Moreover, relevant evidence should not be excluded unless no other remedy suffices. Cooper v. State, 336 So.2d 1133 (Fla. 1976), cert. denied, 431 U.S. 925, 97 S.Ct. 2200, 53 L.Ed.2d 239 (1977); Keen v. State, 456 So.2d 571, 574 (Fla. 2d DCA 1984).
Finally, we fail to see how the admission of this evidence would prove to be either confusing or misleading. Mrs. Story was not moving for the evidence to be admitted to inculpate Mr. Wilson or Mr. Cato in the present charges. Rather, we think the admission of these specific instances may have even helped to explain why fruit was not being delivered by the corporation to the fruit purchasers. The excluded evidence would have supported Mrs. Story's testimony that she believed she was purchasing the necessary groves of fruit to meet the corporation's demand, while in reality, the groves were nonexistent.
*943 A defendant in a criminal case has a fundamental constitutionally protected right to present a defense. Washington v. Texas, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967). The evidence excluded by the trial judge was critical, relevant evidence relating to the issue of Mrs. Story's intent with respect to the crimes charged. Accordingly, we conclude the trial court erred in excluding references to these instances of fraud by her employees since it deprived her of asserting her defense that she lacked the specific intent to commit the crimes of theft. We cannot say the court's error in refusing to allow the evidence relating to the convictions was harmless beyond a reasonable doubt. DiGuilio v. State, 491 So.2d 1129 (Fla. 1986).
We reverse Mrs. Story's convictions and sentence on the RICO and grand theft counts and remand for a new trial. We affirm her conviction and sentence for maintaining false citrus records, as we find no merit to her contention on that point.
CAMPBELL and PATTERSON, JJ., concur.
NOTES
[1] Sections 895.05(3) and 895.05(4), Florida Statutes (1985).
[2] Section 812.014, Florida Statutes (1985).
[3] Section 601.701, Florida Statutes (1985).
[4] See Rivera v. State, 561 So.2d 536 (Fla. 1990).