714 So.2d 470 (1998)
Joseph VANNIER, Appellant,
v.
STATE of Florida, Appellee.
No. 96-0794.
District Court of Appeal of Florida, Fourth District.
May 6, 1998.
Rehearing and Rehearing Denied July 15, 1998.
*471 Richard L. Jorandby, Public Defender, and David McPherrin, Assistant Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Joseph A. Tringali, Assistant Attorney General, West Palm Beach, for appellee.
Rehearing and Rehearing En Banc Denied July 15, 1998.
FARMER, Judge.
A jury found defendant guilty of the murder of his wife. We find prejudicial error in the combined decisions of the trial court in failing to admit evidence in the decedent's own words indicating a suicidal intent, as well as evidence that she had recently been given a prescription for a sleeping medication with recognized side effects of depression, aggression and suicide.
In broad outline, the facts of the death are quite indeterminate. Defendant had told his wife that he wanted a divorce. The shooting occurred while a mutual friend was staying in their home. Defendant called the police, reporting that he had been shot by his wife who had then shot herself. He recovered from a gunshot wound to his hand; she died three days later. At trial defendant asserted that his wife had committed suicide. He offered the testimony of a forensic pathologist and a clinical psychologist, who testified to opinions that she had taken her own life. The state countered with its own clinical psychologist and a minister who testified against suicide.
The trial court permitted the State to elicit testimony that the victim feared the defendant because of his volatility. To support his theory of suicide defendant offered several letters written by the decedent that, he claimed, evidenced her suicidal tendencies.[1] In these excluded letters she expressed thoughts, according to the defense psychologist, consistent with depression and suicide and on which the defense psychologist relied to conclude that she was suicidal. Defendant's clinical psychologist had expressly based his opinion of suicide on these excluded letters. The court also excluded evidence that she had consulted a psychiatrist because she was experiencing stress and anxiety, and that shortly before her death she was prescribed a sleeping medication, the side effects of which included depression, aggressive and suicidal behavior.
As the Court said in Chambers v. Mississippi, 410 U.S. 284, 302, 93 S.Ct. 1038, 1049, 35 L.Ed.2d 297 (1973), "[f]ew rights are more fundamental than that of an accused to present witnesses in his own defense." Although this quotation refers to "witnesses", the principle obviously includes other forms of evidence as well. Our own supreme court has *472 held that "where evidence tends in any way, even indirectly, to establish a reasonable doubt of defendant's guilt, it is error to deny its admission." Rivera v. State, 561 So.2d 536, 539 (Fla.1990).
Here the state's objection to the proffered letters was relevancy. The Florida Evidence Code defines relevancy as "evidence tending to prove or disprove a material fact." § 90.401, Fla. Stat. (1995). "All relevant evidence is admissible, except as provided by law." § 90.402, Fla. Stat. (1995). While the defense is bound by the same rules of evidence as the state,[2] the question of what is relevant to show a reasonable doubt may present different considerations than the question of what is relevant to show the commission of the crime itself. If there is any possibility of a tendency of evidence to create a reasonable doubt, the rules of evidence are usually construed to allow for its admissibility. Rivera; State v. Savino, 567 So.2d 892, 893 (Fla.1990); Story v. State, 589 So.2d 939 (Fla. 2d DCA 1991); Moreno v. State, 418 So.2d 1223, 1225 (Fla. 3d DCA 1982). Because suicide was defendant's theory of defensethe death resulted not from the criminal agency of anyone but instead from the decedent's own handany evidence that tends "in any way, even indirectly," to show that the death did result from suicide is admissible, and it is error to exclude it.
We stress that the letters were written by the decedent herself. Both parties characterize their content as discussing financial difficulties and her relationship with her son. Defendant argues that the letters show suicidal tendencies on her part. His expert witness, the clinical psychologist, supported that characterization and specifically relied on these letters in forming an opinion of suicidal tendencies. The state's expert psychologist disagreed with the diagnosis. We have examined the proffered letters and conclude that they are equivocal. Read through one set of eyes, they conceivably indicate suicidal depression; read through another, they do not. We believe that where evidence of this kind arguably tends to show a fact that might lead a jury to exonerate a defendant, the trial judge's discretion is reduced and it is up to the jury to decide which inference is correct.
The state argues that the excluded letters show only financial and family troubles, not suicide. We believe that state's argument misses the point. For most people, the idea of suicide is incomprehensible. The mind struggles to understand why anyone might resist the innate drive for self preservation and take one's own life. The will to survive is so strong that there does not seem to be any provocation sufficient to compel that final remedy. Even when uttered, the sufficiency of the reasons strikes most of us as obscure.
Yet among the most often repeated reasons for suicide are money and children. And, indeed, that is precisely what these letters deal with, as conceded by the state. Hence to conclude that, because these letters concern only money and family, they are not relevant to suicide is to eliminate from the possible universe of reasons that might have driven this decedent to take her own life two of the most familiar ones. We do not believe that any residual discretion residing in the trial judge as to what is relevant evidence extends so far.
Of course, the inevitable question is whether the exclusion is harmless. The state rightly points out that defendant was allowed to have his two experts mentioned earlier render opinions of suicide. Thus, according to the state, the suicide theory was before the jury and actually supported by the testimony of the witnesses, one of whom explicitly stated reliance on the letters. The jury rejected suicide and, contends the state, therefore any error in excluding the letters was harmless.
The physical evidence in this case is very close. The blood spatter and gunpowder residue evidence is itself evenly disposed in both directions. The testimony of the houseguest is inconclusive. Decedent's wound is not incompatible with suicide. The nature of the wound suffered by defendant is consistent with his version of the events and with some of the other expert witnesses. It therefore cannot be said that the state's evidence of *473 guilt is so one-sided that the exclusion of this evidence is unlikely to have affected the outcome.
In any event, we do not believe that the nature of suicide would allow us to say with any confidence that the excluded letters would not have tipped the balance of the evidence in favor of a jury disposition of not guilty. As we have suggested, the average juror must necessarily struggle to understand what could possibly motivate any person to take one's own life. If proffered evidence would have any tendency, however remotely or indirectly, to convince a juror that the decedent's death came from her own hand, it must be deemed prejudicial to have excluded it.
What we have just said applies with equal force to the proffered evidence that decedent was referred by her general physician to a psychiatrist shortly before her death and that she was prescribed, and took, medication whose side effects included depression and aggressive and suicidal behavior. Like the excluded letters, or in combination therewith, under the facts of this case the excluded evidence could have been the feather that tipped the scales of doubt.
REVERSED AND REMANDED FOR NEW TRIAL.
STEVENSON, J., and FRUSCIANTE, JOHN A., Associate Judge, concur.
NOTES
[1] Defendant proffered 14 documents, consisting of exhibits 30A through 30O (except for 30L which was withdrawn by the defendant). The court admitted exhibit 30D but excluded the remainder.
[2] Rivera, 561 So.2d at 539 (admissibility of evidence must be gauged by the same principle of relevancy as any other evidence offered by the defendant.)