766 So.2d 475 (2000)
Joseph R. MILLIEN, Appellant,
v.
STATE of Florida, Appellee.
No. 4D99-7.
District Court of Appeal of Florida, Fourth District.
September 20, 2000.
*476 John Olea and Richard G. Lubin of Richard G. Lubin, P.A., West Palm Beach, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Heidi L. Bettendorf, Assistant Attorney General, West Palm Beach, for appellee.

ON MOTION FOR REHEARING
STEVENSON, J.
We grant the motion for rehearing, withdraw our prior opinion issued on June 28, 2000, and substitute the following in its place.
Joseph Millien, a minister, was tried by jury and convicted of sexual misconduct with a fifteen-year-old female member of his congregation. The court sentenced Millien to 128 months in prison. Millien argues, among other points, that the trial court deprived him of his right to present a defense by excluding evidence that other female members of his congregation were offered money to fabricate similar stories of sexual misconduct. Because Millien was allowed to present this defense, except where the supporting evidence was hearsay, we affirm the conviction. We reverse the sentence imposed, however, because Millien's offense level was erroneously calculated as a level 9 instead of a level 7 offense.
The State's case-in-chief consisted primarily of (1) the testimony of the victim, G.J., (2) two Williams' rule witnesses, O.P. and N.L., who both testified that Millien had improper sexual contact with them when they were teenagers attending his church, and (3) Millien's confession. Millien challenged the confession at trial, but does not raise an issue concerning it on appeal. One of Millien's theories of defense was that the victim and the two Williams' rule witnesses fabricated their stories as part of a larger conspiracy between several friends and relatives of G.J., O.P., and N.L. to dethrone him and to collect insurance money from the church's one million dollar liability insurance policy. Among other issues on appeal, Millien challenges the trial court's refusal to admit proffered testimony from several potential witnesses who said that certain friends and relatives of the victim and the Williams' rule witnesses asked them to accuse Millien of sexual wrongdoing. We agree with the trial court that this evidence was inadmissible hearsay. See § 90.801(1)(c), Fla. Stat. (1997).
Millien presented several witnesses to prove his "conspiracy theory." Gina Louissaent testified that she had known O.P. for about four years and that they were good friends. Gina testified that after Millien's arrest, O.P. told her that if she would say that Millien had sex with her, she would receive $10,000. Nadege Albert testified that he and the victim, G.J., were best friends. According to Nadege, one week after the allegations surfaced, G.J. said that Millien did not do anything to her and that she was being forced to lie by Kennedy Demosthene, N.L., and a person named Pierre Valencia. G.J. told Nadege that she could not go to her parents because they had been offered $50,000 by the alleged conspirators. Julienne Joseph testified that G.J. was "like a daughter," that G.J. told her that Millien did not touch her in any way, and that she was making the allegations because "money talks." Magalie Poulard testified that she and G.J. were once very good friends and that, on the Thursday after Millien was arrested, G.J. called her on the telephone and admitted that the allegations were false. According to Poulard, G.J. *477 said that she was being forced to lie by Alex Albert and Pierre Valencia.
The proffered testimony that was excluded included (1) testimony from Nadege Albert that N.L.'s husband, Kennedy Demosthene, offered her $50,00 to lie about having sex with Millien; (2) testimony from Magalie Poulard that Kennedy, Alex Albert, and Pierre Valencia asked her to accuse Millien of sexual improprieties; (3) testimony from Gina Louissaent that Nixon Jauquette, O.P.'s husband, tried to force her to testify falsely against Millien; and (4) testimony from Rosemarie Naddy that Kennedy asked her to say that Millien had made improper sexual advances toward her.
Millien contends that the excluded testimony from witnesses that they had been asked to falsely accuse Millien was admissible under the exception to the hearsay rule for out-of-court statements of a declarant's then-existing state of mind to prove subsequent conduct. See § 90.803(3), Flat. Stat.[1] Millien argues that the hearsay statements were offered to prove that the declarants had a plan to discredit him and that the proffered testimony was admissible to show that those declarants carried out their plan by forcing the victims to lie in furtherance of the conspiracy. The problem with Millien's argument is that the record does not support a finding that the hearsay statements at issue were made prior to the time that the declarants would have allegedly encouraged the victims to falsely implicate Millien. Rather, the record supports the oppositethat the case against Millien was already pending when the relatives encouraged these other witnesses to join in the case against Millien by raising false allegations against him. Thus, the proffered testimony would not have tended to prove the declarants' subsequent conduct in furtherance of their design or plan.
Furthermore, in view of all the testimony concerning "the conspiracy" which was allowed into evidence, we cannot say that the trial court abused its discretion in excluding the proffered testimony even if it did qualify as an exception to the hearsay rule. In addition to finding that the proffered testimony was hearsay, the judge found that the evidence was "collateral." While a defendant in a criminal case has the right to present his theory of defense, see Vannier v. State, 714 So.2d 470 (Fla. 4th DCA 1998), this right is subject to the reasonable discretion of the trial judge in controlling the hearing and limiting unnecessary, cumulative, and repetitive testimony. See § 90.403, Fla. Stat. Vannier is distinguishable from the instant case because, there, the trial court excluded a whole category of evidence: suicide letters tending to support the defendant's theory that the victim killed herself. Here, the trial court did not prevent appellant from presenting his conspiracy theory defense by excluding entire categories of evidence. The jury heard that the victim, the Williams' rule witnesses, and at least one other woman had been encouraged or offered money to testify falsely against Millien. Thus, we affirm Millien's conviction.
We agree with appellant, however, that the trial judge erred in scoring his offense as a level 9 offense under the 1994 sentencing guidelines, which were controlling in this case. Millien was convicted of the first degree felony offense of sexual conduct with a child between the ages of twelve and eighteen pursuant to Florida Statutes section 794.011(8)(b) (1993). Florida Statutes section 921.0012 (1993), contains the sentencing guidelines ranking *478 chart; the offense for which Millien was convicted, section 794.011(8)(b), is not listed in that chart. Section 921.0013 provides:
A felony offense not listed in s. 921.0012 is ranked with respect to offense severity level by the Legislature, commensurate with the harm or potential harm that is caused by the offense to the community. Prior to the time the Legislature ranks an offense which has not been ranked, the severity level is within the following parameters:
. . . .
(3) A felony of the first degree within offense level 7.
Chapter 93-156, section 4, Laws of Florida repealed section 794.041(2)(b), Florida Statutes (1991). Section 794.041(2)(b) stated:
(2) Any person who stands in a position of familial or custodial authority to a child 12 years of age or older but less than 18 years of age and who:
. . . .
(b) Engages in sexual activity with that child is guilty of a felony of the first degree....
Simultaneously, the legislature enacted section 794.011(8)(b), the elements of which are identical to section 794.041(2)(b). The old section 794.041(2)(b) was still listed in section 921.0012 in 1994; the newly enacted section 794.011(8)(b) did not find its way onto the chart in section 921.0012 as a level 9 offense until October 1, 1995. See Ch. 95-184, § 5, at 1679, Laws of Fla.
In scoring Millien's offense at level 9, the trial court stated:
I will deny the objection as I find that the issue is form over substance; that the statute was on the books of sexual battery, engaging in sexual conduct with a minor twelve to eighteen years of age by a person of familial or custodial authority, no matter if it was in '73, '74, or now'93, '94, '98 and that the elements have not changed, the statutes there.
Is it a scrivener's error? I don't know. But I will find there is form over substance and treat this as a level 9.
We disagree with the trial court's "form over substance" analysis; the offense for which Millien was convicted is clearly not listed in the applicable 1994 chart as a level 9 offense. The guidelines in effect at the time of the offense must be utilized, and this court is not at liberty to presume that a scrivener's error occurred in the guidelines as written. See Roberts v. State, 715 So.2d 302, 303 (Fla. 5th DCA 1998)(holding that the defendant was entitled to the benefits of section 921.0013(3) since the crimes of sexual battery for which the defendant was convicted, section 794.011(8)(b), were not enumerated in section 921.0012 when he committed the crimes in 1994). Millien was harmed by this error because a level 9 offense is assigned 91 points and a level 7 offense is assigned 42 points. See § 921.0014, Fla. Stat. Accordingly, we vacate the sentence imposed and remand to the trial court for resentencing in accordance with this opinion.
We have considered the other issues raised on appeal, and we find no error.
AFFIRMED in part, REVERSED in part, and REMANDED.
WARNER, C.J., and GUNTHER, J., concur.
NOTES
[1] As relevant here, section 90.803(3) allows an exception to the hearsay rule for:

(a) A statement of the declarant's then-existing state of mind, ..., including a statement of intent, plan, motive, [or] design,..., when such evidence is offered to:
(1) Prove the declarant's state of mind, emotion, or physical sensation at that time or at any other time when such state is an issue in the action.
(2) Prove or explain acts of subsequent conduct of the declarant.