STRINGER, Judge.
Kem Mateo challenges his convictions and sentences for aggravated assault on a law enforcement officer, introduction of contraband into a detention facility, and resisting an officer without violence, raising four grounds for relief. We find no merit in Mateo’s arguments that the trial court should have dismissed the charges against him or that the trial court should have granted his motion for judgment of acquittal. However, we agree with Mateo that the trial court abused its discretion in refusing to permit him to present evidence that supported his defense. Accordingly, we reverse and remand for a new trial. This resolution renders Mateo’s remaining argument moot.
Mateo was originally charged with two counts of aggravated assault against a law enforcement officer, introduction of contraband into a detention facility, and resisting an officer with violence. These charges stemmed from an incident that occurred while Mateo was being held in a Hillsbor-ough County jail. According to the State’s witnesses, the incident began when Ma-teo’s request for additional juice with his lunch was denied. Mateo then allegedly refused to return his lunch tray to jail officials and subsequently broke the tray and fashioned one of the pieces into a shank. Mateo then covered the window to his cell and flooded it by clogging the toilet. Jail officials attempted to calm Ma-teo down by reasoning with him, but ultimately they decided to forcibly remove Mateo from his cell. As they tried to do so, Mateo allegedly swung at the officers with the shank he made from his lunch tray. Mateo was then sprayed with pepper spray, after which he gave up resisting and was removed from his cell. The State’s witnesses admitted that Mateo had several cuts and bruises after he was removed from his cell and that he was kept in a form of disciplinary confinement for seven hours after this incident.
Mateo’s theory of defense was that the jail officials became angry when he refused to return his lunch tray and used the opportunity to punish him with excessive force. Mateo admitted that he had been in this particular jail before, and he contended that because he was vocal about complaints, the jail officials did not like him and “had it in for him.” Mateo contended that the jail officials made up the story about the shank and the assault as a cover for their use of excessive force.
In support of this defense, Mateo sought to introduce the substance of a telephone conversation that had occurred between Mateo’s wife and a placement official at the jail several days before the alleged incident. During that conversation, the following occurred:
MS. MATEO: Yes, Ms. Brown, my name is Kathy Mateo—
MS. BROWN: Uh-huh.
*379 MS. MATEO: — and they’ve got my husband in lockdown.
MS. BROWN: I’m moving him out.
MS. MATEO: Okay. I just wondered because he said he hadn’t done anything.
MS. BROWN: He hadn’t done a thing. You know, they did it based on his past behavior.
MS. MATEO: Right. Well, he’s trying his hardest — ■
MS. BROWN: Right. To hang in there and do right.
MS. MATEO: Right. Right.
MS. BROWN: I understand. So I’m moving him out. I talked with the lieutenant today and told him that I was going to move him, but I’m going to move him over to Orient Road.
MS. MATEO: Okay.
MS. BROWN: That way the supervisor won’t go after him.
During Mateo’s first trial on these charges, the substance of this conversation was admitted in evidence through the in-court testimony of Ms. Brown. At the conclusion of that trial, the jury found Mateo not guilty on one of the two aggravated assault charges, but it was unable to reach a verdict on the remaining three charges, and the trial court declared a mistrial as to those charges.
Before the retrial on the remaining three charges, the parties determined that Ms. Brown was unavailable to testify at the retrial due to previously scheduled surgery. Rather than agreeing to a continuance of the scheduled retrial, the State stipulated to the authenticity and chain of custody of an audiotape of the conversation and indicated that it had no foundational objections to the use of the audiotape in lieu of Ms. Brown’s live testimony. However, when Mateo sought to introduce the audiotape in evidence, the State objected to its introduction based on relevance.[1] Despite Mateo’s argument that the tape was relevant to show that the jail officials had a predisposition against him, the trial court sustained the objection and held that the audiotape would not be admitted because it was irrelevant. The trial court then also stated that even if there was some way that the audiotape was relevant, any relevance was outweighed by the prejudicial effect.
At the conclusion of the retrial, the jury found Mateo guilty as charged on the counts for aggravated assault and introduction of contraband into a detention facility and guilty of the lesser-included offense of resisting an officer without violence. The trial court subsequently denied Mateo’s motion for new trial based on the trial court’s alleged error in refusing to admit the tape.
Florida law is clear that “where evidence tends in any way, even indirectly, to establish a reasonable doubt of defendant’s guilt, it is error to deny its admission.” Rivera v. State, 561 So.2d 536, 539 (Fla.1990). This principle is based, in part, on the U.S. Supreme Court’s holding that “[fjew rights are more fundamental than that of an accused to present witnesses in his own defense.” Chambers v. Mississippi, 410 U.S. 284, 302, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973). Thus, as a general proposition, any evidence that tends to support the defendant’s theory of defense is admissible, and it is error to exclude it. Dean v. State, 916 So.2d 962 *380 (Fla. 4th DCA 2005); Vannier v. State, 714 So.2d 470, 472 (Fla. 4th DCA 1998).
Further, “while the defense is bound by the same rules of evidence as the state, the question of what is relevant to show a reasonable doubt may present different considerations than the question of what is relevant to show the commission of the crime itself.” Vannier, 714 So.2d at 472. Thus, in Vannier, the court held that it was error for the trial court to have excluded evidence of letters written by the victim that tended to show that she was depressed and thus arguably supported the defendant’s theory that the victim was not murdered but instead committed suicide. Id. at 472-73. Similarly, in Bertram v. State, 637 So.2d 258, 260 (Fla. 2d DCA 1994), this court held that it was error for the trial court to refuse to permit the defendant to cross-examine a witness as to prior altercations between the defendant and his father when the theory of defense was that the father had “set up” the defendant in retaliation for the altercations. Likewise, in Dean, the court held that it was error for the trial court to refuse to permit the defendant to introduce a pawn slip when the defense theory was that the person who pawned the jewelry, rather than the defendant, was the perpetrator of the robbery. 916 So.2d at 964.
In this case, Mateo’s theory of defense was that the jail officials were biased against him because he had been vocal about jail conditions in the past and that they made up the story about the lunch tray and the shank to cover up their misconduct. The audiotape in question does provide some evidence that supports this theory. The jail employee indicated that Mateo was placed in lockdown based solely on his “past behavior” and that she would be moving Mateo to a different facility so that “the supervisor won’t go after him.” These statements, made by an employee of the jail where the incident occurred, provide at least some evidence of a pre-exist-ing animosity between Mateo and the jail officials. This animosity, in turn, could provide evidence of a bias against Mateo by the jail officials that might affect the jury’s assessment of their credibility and/or their recollections and interpretations of the events supporting the charges. Thus, the audiotape was relevant in that it tended to support Mateo’s defense, and the trial court erred in excluding it from evidence.
The State argues that the trial court correctly excluded the audiotape under section 90.403, Florida Statutes (2001), because its probative value was substantially outweighed by its prejudicial effect. However, at trial, the State presented absolutely no argument or evidence to show that it would be prejudiced by the admission of the audiotape. In fact, it was clear that the State actually anticipated that the audiotape would be admitted. Further, given the short length of the audiotape and its limited content, there is no evidence to support any finding that the jury would have been confused or misled by its admission. To the extent that certain of Mateo’s wife’s statements could be seen as irrelevant, those statements could have been redacted so as to avoid undue prejudice while still allowing Mateo to present the portions that supported his defense. See Story v. State, 589 So.2d 939, 942 (Fla. 2d DCA 1991) (holding that relevant evidence supporting a defendant’s theory of defense should not be excluded unless no other remedy suffices). Thus, the trial court’s ruling that the audiotape should be excluded in its entirety under section 90.403 constituted an abuse of discretion.
Finally, this error is not harmless for several reasons. First, while Mateo was able to bring out some aspects of his theory of defense on cross-examination, *381 the exclusion of this audiotape effectively left Mateo with no evidence to present to the jury in support of his defense. Such a decision is generally considered harmful error. See Zanicchi v. State, 679 So.2d 40, 41 (Fla. 4th DCA 1996) (finding exclusion of the defendant’s only proffered evidence in support of his defense to be harmful error). Second, the State made the jail officials’ credibility a feature of the trial in its closing argument, during which the prosecutor strenuously argued that the jail officials had no motive to seek to convict Mateo. The audiotape provided some evidence of bias or motive that would have rebutted this argument to some extent. Third, the fact that the case mistried when the substance of the conversation was admitted and went to a guilty verdict when it was excluded tends to show that the error may not have been harmless. For these reasons, we conclude that the error in excluding the audiotape was not harmless.
Reversed and remanded for a new trial.
CASANUEVA, J., and DANAHY, PAUL W., Senior Judge, Concur.

. The State did not object to the audiotape on hearsay grounds, perhaps because it had stipulated to the use of the tape rather than agreeing to a continuance so that Mateo could secure Ms. Brown’s in-court testimony. Because we do not know whether Ms. Brown will be available for the retrial now required, we do not comment on how the parties should address the potential hearsay issue on remand.