IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FIFTH DISTRICT

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

KELLY MATHIS,

        Appellant,

 v.                                      Case No.  5D14-492

STATE OF FLORIDA,

        Appellee.

_____/

Opinion filed October 14, 2016

Appeal from the Circuit Court
for Seminole County,
Kenneth R. Lester, Jr., Judge.

Michael R. Ufferman, of Michael Ufferman
Law Firm, P.A., and Peter D. Webster, of
Carlton Fields Jorden Burt, P.A.,
Tallahassee, for Appellant.

Marc J. Randazza, of Randazza Legal
Group, Las Vegas, NV, Amicus Curiae for
the First Amendment Lawyers Association.

Ashley Litwin, Miami, Amicus Curiae for
National Association of Criminal Defense
Lawyers.

Pamela Jo Bondi, Attorney General,
Tallahassee, and Diana K. Bock and
Pamela J. Koller, Assistant Attorneys
General, Daytona Beach, Office of
Statewide Prosecution, Tampa, for
Appellee.

WALLIS, J.

Kelly Mathis ("Appellant") appeals his convictions and sentences for: racketeering (RICO);[1] fifty-one counts of setting up, promoting, or conducting an illegal lottery;[2] and fifty-one counts of possessing an illegal slot machine or device.[3] Appellant argues, and we agree, that the trial court abused its discretion by excluding evidence supporting his theory of the defense, effectively preventing him from arguing that he lacked the requisite mens rea for his offenses. We reverse Appellant's convictions and sentences and remand for a new trial.[4]

This case stems from Florida's crackdown on what became colloquially known as "internet cafes," which sprung up throughout the state between 2007 and 2014. In 2007, Michael Ryles, Chase Burns, and Brad Skidmore hired Appellant, an attorney in Jacksonville, to research whether Florida law permitted the operation of internet cafes.[5] Appellant conducted legal research on the issue for several weeks, discussed the proposed business model with various state and local officials, and ultimately concluded

---

[1] § 895.03(3), Fla. Stat. (2013).

[2] § 849.091(1), Fla. Stat. (2013).

[3] § 849.15, Fla. Stat. (2013).

[4] We affirm the trial court's denial of Appellant's cause challenge to a prospective juror without discussion.

[5] The proposed business model operated as follows. Customers purchased "internet time" to use on computers located in the internet cafes. When a customer purchased internet time, they received free entries into promotional sweepstakes. Customers could use the computers to reveal their sweepstakes entries to see if they won a promotional prize. The software used to reveal the sweepstakes entries simulated popular casino-style games. Each sweepstakes entry contained a predetermined prize that neither the customer nor the internet cafe employees could alter.

that his clients could legally operate internet cafes in Florida. After meeting with Appellant, Ryles, Burns, and Skidmore contacted Jerry Bass and Johnny Duncan, who ran a veteran's organization called Allied Veterans of the World ("Allied Veterans"). Appellant's clients agreed to operate the internet cafes as a veteran's organization under section 501(c)(19) of the Internal Revenue Code using Allied Veterans' name. Allied Veterans opened its first internet cafe in Jacksonville in 2007 and subsequently expanded to fifty affiliated locations throughout Florida by 2011.

Appellant dealt with Allied Veterans solely in the scope of an attorney-client relationship. Appellant neither invested in nor received profits from the business. The only financial benefit Appellant received from Allied Veterans came from attorney's fees incurred in the course of representing the organization. When Allied Veterans expressed interest in expanding the cafes, Appellant undertook additional legal research on the proposed location to ensure compliance with zoning ordinances and other local laws, which included speaking with various local authorities—such as police chiefs and assistant state attorneys. Prior to expansion, Appellant presented Allied Veterans with a report recommending whether it could feasibly open an affiliate in the proposed location.

In 2011, the Volusia County Sherriff's Office established a multi-jurisdictional taskforce to investigate internet cafes. The task force executed over fifty search warrants at Allied Veterans locations and Appellant's law firm, ultimately arresting fifty-seven persons described as "owners or managers or those who facilitated the growth and operation of the enterprise as a whole." The State, through the Attorney General's Office of Statewide Prosecution, charged the fifty-seven defendants, including Appellant, with: racketeering (RICO); conspiracy to commit racketeering; fifty-one counts of setting up,

promoting, or conducting an illegal lottery; fifty-one counts of possessing an illegal slot machine or device; and fifty-three counts of participating in an illegal gambling business (money laundering).

Before trial, Appellant requested that the trial court take judicial notice of evidence supporting his theory of the defense, including: (1) ordinances regulating internet cafes in Jacksonville, Clay County, Leon County, Seminole County, St. Johns County, Volusia County, and Wakulla County; (2) a circuit court order upholding the Jacksonville ordinance; and (3) various Florida House of Representatives staff analyses and proposed bills regulating internet cafes. In response, the State filed two motions in limine to prevent Appellant from both referencing any ordinances and raising an "advice of counsel" defense at trial.

The trial court considered the notice requests and motions in limine at a hearing in August 2013. The State argued that Appellant improperly wished to raise an "advice of counsel" defense and requested that the trial court compel Appellant to provide the names of all attorneys with whom he discussed the legality of the internet cafes. Defense counsel disagreed with the State's framing of the issue, explaining that Appellant did not rely on advice of retained counsel, but rather that his research and meetings with government officials led him to advise Allied Veterans that internet cafes were legal. The trial court found the State's argument compelling, reasoning that the State was not charging Appellant as an attorney, only as an ordinary member of the organization. The trial court expressed its understanding of the issue in the following statement:

> I think you're elevating Mr. Mathis much higher than the state
> intends to do it. I think they're putting him down on the same
> common level as everybody else for the most part.

4

. . . .

> It's a slot machine, lottery, RICO case with everybody involved. And if the State decides that they are going to single him out as the attorney, which necessitates you having to bring in these other attorneys for some reason, I'll be very careful to hear what they have to say as far as that's concerned, but otherwise to me . . . it's a simple trial with a bunch of defendants here going on.
>
> And the fact that you are concerned or for some reason you think they're focusing on him as the attorney to where you need to bring other attorneys to give their interpretation of the law, I just don't see that, really.

After the hearing, the trial court entered an order granting the State's motion in limine regarding the "advice of counsel" defense, prohibiting Appellant from introducing any "communication between [him] and any other attorney" regarding the legality of the Allied Veterans' business model. The trial court granted the State's remaining motion in limine, prohibiting Appellant from "present[ing] evidence and testimony relating to county and municipal ordinances, as such evidence is irrelevant to the issue of whether he acted in violation of State statutes."

Appellant's trial commenced on September 16, 2013, and concluded on October 11, 2013. The State contradicted its pre-trial assertion that it would not focus on Appellant's capacity as an attorney, as demonstrated by the prosecutor's remarks during opening statement:

> [W]ith Kelly Mathis -- it's about gambling. That's what the charges are. Let's be clear. But it's about Kelly Mathis gaming the system. He's a lawyer and he gamed the legal system.
>
> . . . .
>
> You see, one of the other reasons we know that Kelly Mathis is gaming the system is that you're going to learn that

5

> . . . a couple of attorney generals from the State of Florida had issued opinions on similar types of sweepstakes . . . and said they're illegal.
>
> You're going to learn that one attorney general . . . wrote a letter to Mr. Mathis about it . . . saying it was illegal. But the games continued.
>
> . . . .
>
> [Y]ou're going to hear people say that if he had said, hey, this is a real risk or this is illegal, like the attorney general opinion said, they wouldn't have done it. He gamed the system.

Throughout the trial, the State elicited witness testimony focusing on the soundness of Appellant's legal conclusions. Yet, the trial court prohibited Appellant from presenting any testimony to rebut the prosecutor's theme, including the local ordinances that specifically permitted the operation of internet cafes.

The State persisted in its assertion that Appellant knowingly provided false legal advice during closing argument and rebuttal:

> I'll submit to you that the Defendant was quite well aware of what he was doing when he was going out talking to everybody.
>
> [T]he Defendant, in explaining the Allied Veterans locations, was very aware of what the law is. He was very aware of what the law is. Because the manner in which he described what was happening at the Allied Veterans locations was a misrepresentation.
>
> . . . .
>
> But why are we here on Kelly Mathis? Because of the way he gamed the law, the way he chose to practice law, to mislead, to deceive.
>
> . . . .

6

They tell you he had a love of the law. You know a love of the law would involve respect. It wouldn't be to come in here and try to manipulate it to make it work so that you can bill millions. That's not a love of the law.

. . . .

This case is about gambling. But in reality, it's about complete disrespect, a disregard, and misrepresentation and manipulation of the law.

. . . .

Four times I heard during the course of this, he was just a lawyer. He was only a lawyer . . . If anybody out of the fifty-seven defendants that were involved in this, if anybody knew better about what the law said, it was him.

. . . .

You know, it's not only -- it's aggravated because he was a lawyer and he knew better.

The jury returned verdicts of guilty as to racketeering (Count 1), not guilty as to conspiracy to commit racketeering (Count 2), guilty as to conducting an illegal lottery (Counts 3-53), and guilty as to possessing an illegal slot machine (Counts 54-104).[6] The trial court sentenced Appellant to six years' incarceration on Count 1, time served on Counts 3-53, and five years' incarceration on Counts 54-104, to run concurrently.

"A trial court has wide discretion in determining the admissibility of evidence, and, absent an abuse of discretion, the trial court's ruling on evidentiary matters will not be overturned." Helton v. Bank of Am., N.A., 187 So. 3d 245, 247 (Fla. 5th DCA 2016) (quoting LaMarr v. Lang, 796 So. 2d 1208, 1209 (Fla. 5th DCA 2001)). A trial court's ruling on the admissibility of evidence "constitutes an abuse of discretion if it is based 'on an

---

[6] The trial court granted Appellant's motion for judgment of acquittal as to the fifty-three counts for money laundering.

7

erroneous view of the law or on a clearly erroneous assessment of the evidence.'" Johnson v. State, 969 So. 2d 938, 949 (Fla. 2007) (quoting Cooter & Gell v. Hartmarx Corp., 496 U.S. 384 (1990)). "Florida law is clear that 'where evidence tends in any way, even indirectly, to establish a reasonable doubt of defendant's guilt, it is error to deny its admission.'" Mateo v. State, 932 So. 2d 376, 379 (Fla. 2d DCA 2006) (quoting Rivera v. State, 561 So. 2d 536, 539 (Fla. 1990)).

We note that the law generally disfavors crimes containing no knowledge or mens rea element. See, e.g., Staples v. United States, 511 U.S. 600, 605-06 (1994). Indeed, at common law, all crimes included an act or omission element in addition to a knowledge or mens rea element. State v. Giorgetti, 868 So. 2d 512, 515 (Fla. 2004). Including a mens rea requirement remains "the rule of, rather than the exception to, the Anglo-American criminal jurisprudence." Staples, 511 U.S. at 605 (quoting United States v. Gympsum Co., 438 U.S. 422, 436 (1978)). "In other words, the Court has virtually created a presumption in favor of a guilty knowledge element absent an express provision to the contrary." Giorgetti, 868 So. 2d at 515. "The Legislature is vested with the authority to define the elements of a crime, and therefore 'determining whether scienter is an essential element of a statutory crime is a question of legislative intent.'" Reynolds v. State, 842 So. 2d 46, 49 (Fla. 2002) (quoting Chicone v. State, 684 So. 2d 736, 741 (Fla. 1996)). In determining the Legislature's intent, we look first to the statute's plain language. Giorgetti, 868 So. 2d at 515.

The State charged Appellant under the following subsections of Florida's RICO statute:

> (3) It is unlawful for any person employed by, or associated with, any enterprise to conduct or participate, directly or

8

indirectly, in such enterprise through a pattern of racketeering activity or the collection of an unlawful debt.

(4) It is unlawful for any person to conspire or endeavor to violate any of the provisions of subsection (1), subsection (2), or subsection (3).

§ 895.03, Fla. Stat. This language does not express the Legislature's intent to dispense with a mens rea requirement. However, silence on this point by itself does not necessarily suggest that the Legislature intended to dispense with a conventional mens rea element, which would require that the defendant know the facts that made his conduct illegal. Staples, 511 U.S. at 605. Accordingly, we interpret the statute in a manner that comports with due process by "ascrib[ing] the Legislature with having intended to include such a requirement." See Giorgetti, 868 So. 2d at 518. We find support in our supreme court's decision in Bowden v. State, where it rejected the argument that the statute "is facially unconstitutional because it imposes strict liability without requiring criminal intent or knowledge, and because its sanctions are predicated upon . . . presumptively protected activities." 402 So. 2d 1173, 1174 (Fla. 1981). The court further determined that the "assertion that 'under this law the prohibited association with the enterprise can be entirely innocent or unknowing,' is simply not correct. Nor is it true that 'participation, directly or indirectly, in the enterprise can occur without any intent . . . that the condemned behavior relate to any enterprise.'" Id. at 1175 (alteration in original).

Based on the foregoing, we find no evidence that the Legislature intended to remove knowledge or mens rea as an element of the offense outlined in section 895.03(3). Thus, the trial court should have permitted Appellant to offer evidence negating his intent to commit racketeering. The State's persistent trial theme involved repeatedly arguing that Appellant knowingly assisted Allied Veterans in operating an illegal

9

sweepstakes. Yet, the testimony established that Appellant diligently researched the legal issues before concluding that Florida law did not prohibit internet cafes. The trial court's decision to exclude the contested evidence effectively thwarted Appellant's argument that he lacked the mens rea for his offenses.

The State contends that allowing Appellant to introduce the contested evidence would result in "a parade of lawyers, both private and government, tak[ing] the stand to testify to their respective interpretations of what the law should be." We disagree with the State's position because Appellant's purpose in introducing this evidence was to challenge the knowledge element of the offense, not to advance an argument that internet cafes were legal. Appellant properly concedes that this distinction likely necessitates that the trial court provide a limiting instruction, informing the jury to consider the evidence only as it relates to Appellant's state of mind. By preventing Appellant from introducing this evidence, the trial court effectively transformed the racketeering charge into a strict liability offense. Appellant's argument that he lacked the mens rea necessary to commit racketeering amounts to a valid theory of defense, and the trial court abused its discretion by excluding the evidence supporting that defense. See Mateo, 932 So. 2d at 379.

Appellant next argues that the trial court abused its discretion by denying his request for a special jury instruction tracking the language of Florida's game promotion statute, section 849.094, Florida Statutes (2013). We agree with the trial court that the circumstances did not warrant a special instruction. However, consistent with our determination that Appellant can present evidence providing the full context for his legal representation, we find that the trial court should permit Appellant to introduce a description of or citation to section 849.094. The State maintains that Appellant knowingly

misrepresented Allied Veterans' business model to various State officials, and therefore he should not be able to rely on their conclusions that Allied Veterans complied with section 849.094. We find that this argument goes to the weight of the evidence, not its admissibility; certainly the State may cross-examine Appellant's witnesses as to whether their opinions that Allied Veterans operated a legal game promotion would have changed had Appellant provided the details the State contends he misrepresented or omitted.

For these reasons, we reverse and remand for a new trial, affording Appellant the opportunity to present evidence demonstrating the full context of his legal advice to rebut the State's allegations that he knowingly assisted Allied Veterans in violating Florida law. We affirm the remaining issues on appeal without further discussion.

AFFIRMED in Part; REVERSED in Part; and REMANDED for a new trial.

ORFINGER and EDWARDS, JJ., concur.

11