DISTRICT COURT OF APPEAL OF FLORIDA
SECOND DISTRICT
_____

STEPHEN LAWRENCE PANARO,

Appellant,

v.

STATE OF FLORIDA,

Appellee.

No. 2D2023-1369
_____

December 13, 2024

Appeal from the County Court for Pinellas County; Dorothy Vaccaro, Judge.

J. Jervis Wise of Brunvand Wise, P.A., Clearwater, for Appellant.

Ashley Moody, Attorney General, Tallahassee, and Nicole Rochelle Smith, Assistant Attorney General, Tampa, for Appellee.

ROTHSTEIN-YOUAKIM, Judge.

Stephen Panaro was convicted of driving under the influence of alcohol in violation of section 316.193(1), Florida Statutes (2022). On appeal, Panaro argues that the trial court abused its discretion by excluding his expert's testimony concerning his probable blood-alcohol level (BAL) at the time of his arrest. We agree and reverse for a new trial. We reject without further comment, however, his challenge to the court's denial of his motion to suppress evidence.

Shortly after midnight, an officer noticed Panaro speeding and veering into another lane. The officer followed Panaro for some distance

and then pulled him over. According to the officer, Panaro's eyes were bloodshot and his speech was slurred. He appeared unsteady on his feet and smelled of alcohol. When the officer requested that Panaro perform field exercises to demonstrate his sobriety, Panaro refused, insisting that he would do so only if he could first speak with a lawyer. The officer responded that Panaro had no right to a lawyer at that point and that Panaro likely would be unable to find one anyway given the hour. Panaro nonetheless continued to refuse to perform the exercises. This entire encounter was captured on the officer's body camera video.

Based on his observations of impairment, the officer ultimately arrested Panaro and transported him to a breath-testing facility. There, Panaro refused to submit to a breath test.

Panaro listed Dr. Daniel Buffington, a clinical pharmacologist and toxicologist, as an expert witness for trial. The State moved to strike Dr. Buffington, contending that he would opine that "based off his review of the evidence and conversations with the Defendant . . . the Defendant's blood alcohol concentration never exceeded .08." The State argued that Dr. Buffington should be precluded from so testifying because, among other things, Panaro was charged with driving under the influence to the extent that his normal faculties were impaired and there was no allegation that his BAL had exceeded .08.

At the evidentiary hearing on the State's motion, Dr. Buffington testified that he had interviewed Panaro about his medical history and the events of the night in question. During the interview, Panaro had told Dr. Buffington that he had had a glass of wine around 8:30 p.m., a beer around 10:00 p.m., and another beer around 11:30 p.m. Dr. Buffington then had plugged this and other information gained from the

2

interview into the Widmark formula[1] to calculate Panaro's probable BAL at the time of his arrest and had determined that it would have been in the range of .011 and .015 grams per deciliter—far below the level that would have impaired his normal faculties.

Panaro also had told Dr. Buffington (as he likewise had told the officer the night of the incident) that he suffers from tremors and a liver disease. Dr. Buffington testified that Panaro's liver disease could have caused the symptoms that the officer had interpreted as signs of impairment because it causes color changes in the eyes and "an unusual odor to the breath that is sweet or fragrant." Dr. Buffington further testified that he had watched the officer's body camera video and that in his opinion, Panaro's behavior was consistent with his calculation of the probable BAL.

The trial court granted the State's motion principally on relevance grounds, reasoning that the State had charged Panaro with "normal faculties" impairment under section 316.193(1)(a) and not with presumptive impairment based on a blood- or breath-alcohol level of .08 or more under section 316.193(1)(b) or (c). The court also reasoned that allowing Dr. Buffington to testify regarding Panaro's BAL would be confusing to the jury because "the jury will have no instruction on what those levels actually mean."

After closing arguments at trial, Dr. Buffington again testified before the court, solely to preserve the issue for appellate purposes, and he essentially repeated his previous testimony. Neither at the motion

---

[1] The Widmark formula is a common method for calculating blood- or breath-alcohol level at a particular point in time. *See Shea v. Royal Enters., Inc.*, No. 09 CIV. 8709, 2011 WL 2436709, at *3–5 (S.D.N.Y. June 16, 2011) (providing a detailed explanation of the formula and some of its uses).

hearing nor at trial did the State dispute Dr. Buffington's qualifications or the reliability of his methodology; rather, the State stipulated to both.[2]

## Discussion

We review for an abuse of discretion the trial court's exclusion of Dr. Buffington's testimony. *See Parker v. State*, 89 So. 3d 844, 870 (Fla. 2011) (citing *Lynch v. State*, 2 So. 3d 47, 80 (Fla. 2008)). A court's discretion on evidentiary matters, however, is limited by the rules of evidence. *McDuffie v. State*, 970 So. 2d 312, 326 (Fla. 2007) (citing *Johnston v. State*, 863 So. 2d 271, 278 (Fla. 2003)). Accordingly, a court's discretion may be abused when "its ruling is based on an 'erroneous view of the law or on a clearly erroneous assessment of the evidence.' " *Id.* (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990)). We conclude that that is what happened here.

Pursuant to section 316.193,

(1) A person is guilty of the offense of driving under the influence and is subject to punishment as provided in subsection (2) if the person is driving or in actual physical control of a vehicle within this state and:

(a) The person is under the influence of alcoholic beverages . . . , when affected to the extent that the person's normal faculties are impaired;

(b) The person has a blood-alcohol level of 0.08 or more grams of alcohol per 100 milliliters of blood; or

---

[2] Indeed, the State expressly argued at the hearing on its motion to strike, "We're not arguing that Dr. Buffington isn't qualified or that the steps he took to estimate that [BAL] number were incorrect or not." But at oral argument before this court, the State tried to walk that back, suggesting that Dr. Buffington's use of the Widmark formula, when unaccompanied by a near contemporaneous blood- or breath-alcohol test, was unreliable. The State, however, did not advance that position below and certainly cannot make a challenge under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), in this court in the first instance.

(c) The person has a breath-alcohol level of 0.08 or more grams of alcohol per 210 liters of breath.

The offense for which Panaro was charged was "driving under the influence." To be sure, the State has the option of choosing how to proceed in such a case (whether based on the impairment of normal faculties or on an excessive blood- or breath-alcohol level), but what the statute criminalizes is nevertheless "driving under the influence." When seen in that light, the State cannot credibly assert that Dr. Buffington's testimony was irrelevant as it went directly to the issue of whether Panaro's alleged impairment of normal faculties *was due to the influence of alcohol.*

Relevant evidence is defined liberally as that which "tend[s] to prove or disprove a material fact." § 90.401, Fla. Stat. (2022). And as we have previously noted, "[i]n the context of evidence proffered by the defendant, 'where evidence tends in any way, even indirectly, to establish a reasonable doubt of defendant's guilt, it is error to deny its admission' on relevance grounds." *Masaka v. State*, 4 So. 3d 1274, 1280 (Fla. 2d DCA 2009) (quoting *Rivera v. State*, 561 So. 2d 536, 539 (Fla. 1990)). Simply put, Panaro gets the benefit of any doubt on the relevance of the proffered expert testimony. *See Vannier v. State*, 714 So. 2d 470, 472 (Fla. 4th DCA 1998) ("While the defense is bound by the same rules of evidence as the state, the question of what is relevant to show a reasonable doubt may present different considerations than the question of what is relevant to show the commission of the crime itself." (footnote omitted)). But through its ruling, the trial court effectively shut down Panaro's ability to establish a reasonable doubt that he had consumed enough alcohol to impair his normal faculties by providing a medical explanation—unrelated to alcohol consumption—for the officer's observations of impairment. *Cf. State v. Clements*, 968 So. 2d 59, 59–61

(Fla. 1st DCA 2007) (concluding that circuit court did not depart from the essential requirements of law but instead acted in conformity therewith by reversing for new trial after county court excluded defense expert's testimony on Widmark analysis in prosecution for "normal faculties" impairment).

Moreover, we disagree that Dr. Buffington's testimony would have been too confusing for the jury absent instruction on the legal significance of BALs and the legal presumption of impairment. Indeed, Dr. Buffington could easily have testified without reference to the legal presumption and simply opined that as a matter of fact, assuming a person with Panaro's characteristics, the calculated BAL of .011 to .015 would have had no effect on normal faculties. In any event, a typical juror is unlikely to need a special instruction (in addition to the standard instruction on normal faculties impairment) to understand expert medical testimony concerning the correlation between BAL and the impairment of normal faculties relating to walking, talking, and driving. *Cf. Talley v. State*, 260 So. 3d 562, 571 (Fla. 3d DCA 2019) ("[T]he standard jury instructions, together with the juror's common sense, provided sufficient guidance in assessing the reliability of the witnesses' perception and the potential effect of contemporaneous alcohol use on the witness' perception and ability to recall.").

Finally, we cannot say beyond a reasonable doubt that the error in excluding Dr. Buffington's testimony was harmless. *See State v. DiGuilio*, 491 So. 2d 1129, 1135 (Fla. 1986) (holding that an error is harmless only when "there is no reasonable possibility that the error contributed to the conviction"). Without Dr. Buffington's testimony, Panaro—who is a tradesman, not a doctor—was forced to testify as the sole authority on alternative, medical explanations for otherwise incriminating actions and

6

characteristics that police observed (and that body camera video captured) at the stop.  *See Masaka*, 4 So. 3d at 1284 ("Because the trial court's [evidentiary] ruling effectively denied Masaka the right to present his defense, it constituted harmful error.").

We acknowledge that our holding in this case will allow Panaro to present expert testimony on a reconstructed BAL notwithstanding his refusal to submit to a breath test after he was arrested.  But at least on this record, that is an insufficient reason to exclude Dr. Buffington's testimony—evidence may not be excluded merely because it might make the State's case harder to prove.  And we have no doubt that on retrial, Dr. Buffington will be subject to vigorous cross-examination on a variety of topics, including, for example, his reliance on Panaro's self-reporting of what he had to drink and when.

Because the trial court erred in excluding Dr. Buffington as a witness, we reverse Panaro's judgment and sentence and remand for a new trial.

Reversed and remanded for further proceedings.

VILLANTI and BLACK, JJ., Concur.

_____

Opinion subject to revision prior to official publication.