293 So.2d 697 (1974)
Billy Fletcher SPRADLEY, Petitioner,
v.
STATE of Florida, Respondent.
No. 43938.
Supreme Court of Florida.
March 13, 1974.
Rehearing Denied May 21, 1974.
*698 Roy E. Dezern, Jacksonville, for petitioner.
Robert L. Shevin, Atty. Gen., and Richard W. Prospect, Asst. Atty. Gen., for respondent.
CARLTON, Justice (Retired).
On Petition for Writ of Certiorari, petitioner seeks review of a per curiam affirmance by the District Court of Appeal, First District, of his conviction for murder in the first degree. Spradley v. State, 276 So.2d 511 (1st DCA Fla. 1973). After issuance of the writ, and oral argument by the parties, we have concluded, for the reasons outlined below, that we do not have certiorari jurisdiction to review this case; we therefore discharge the writ having been improvidently granted.
Petitioner was tried upon an indictment signed by one Jerry E. Stillson, as assistant state attorney. Petitioner's motion to dismiss the indictment was denied by the trial court.
On July 8, 1971, the trial court, pursuant to the Florida Rules of Criminal Procedure, granted certain pre-trial discovery motions and required the State to furnish to petitioner, inter alia, the exact names and addresses of each person who had allegedly participated in the crime charged and the names and addresses of any persons who had been given any form of immunity for furnishing information relating to the crime charged. On July 15, 1971, the State served petitioner with answers to the granted discovery motions, indicating that one Jean Brooks was the only person who had been granted immunity and listing the alleged participants in the crime.
On July 27, 1971, less than one full day before the start of petitioner's trial, the State served amended answers to the discovery motions, giving petitioner the first notice that one Melvin White had been granted immunity on June 23, 1971, and the first notice that one Benny Hunnicut and one Donald Higgins were allegedly involved in the crime. At the start of petitioner's trial, his counsel orally moved for a continuance for the purpose of taking the deposition of Melvin White or for the exclusion of any testimony by White, Hunnicut, and Higgins, and the exclusion of any evidence implicating Hunnicut and Higgins in the crime. After a hearing on the motions, they were denied by the trial court except to the extent that evidence of the involvement in the crime of Hunnicut and Higgins was excluded.
On appeal, petitioner assigned as error, inter alia, the denial of his motion to dismiss the indictment, the denial of his motion for a continuance, and the denial of his motion to exclude the testimony of *699 Melvin White. As stated above, petitioner's conviction was affirmed, per curiam.
Petitioner has argued that this Court's jurisdiction vests because of a conflict between the instant decision and this Court's decision in Richardson v. State, 246 So.2d 771 (Fla. 1971). Florida Constitution, Article V, § 3(b)(3), F.S.A. Richardson involved the failure of a prosecutor to comply with a different discovery rule than those involved here  Rule 3.220(e), 33 F.S.A., which requires a prosecutor, upon being served a list of witnesses the defense expects to call, to serve upon the defense "a list of all witnesses known to the prosecuting attorney to have information which may be relevant to the offense charged, and to any defense of the person charged with respect thereto". In Richardson, a co-defendant was granted immunity on the day before the trial, and his name was given that day as a state witness to the defendant's counsel. During the first day of trial, through interviewing the co-defendant, defense counsel learned the name of one Dick Davis who was allegedly involved in the crime. The co-defendant testified that Dick Davis was involved and that he had given the name of Dick Davis to the state attorney in a statement made by him well before the trial. We viewed the case as follows:
"... The question is, was the State obligated, under these circumstances, by Rule 1.220(e) [now 3.220(e)] to furnish the name of this alleged person to petitioner's counsel as a witness `known to the prosecuting attorney to have information which may be relevant to the offense charged' or `to any defense of the person charged.' It is evident that the prosecuting attorney had knowledge of the supposed existence of one `Dick Davis' who supposedly had `information which may be relevant to the offense charged', and had this name been furnished to petitioner's counsel in response to his request for a list of the State's witnesses such counsel would have had the opportunity to seek out the witness and endeavor to learn from him what information he did have `which may be relevant to the offense charged.'
......
... When this matter was brought to the trial court's attention at the beginning of the second day of the trial the record is completely silent as to any excuse of the State for not having furnished the name of `Dick Davis' to petitioner's counsel. Furthermore, the Court made no inquiry to determine whether there was in fact such a person as `Dick Davis', and, if so, whether he had and would furnish information to the petitioner which would aid him in his defense. It is entirely possible that if `Dick Davis' were found that [sic] he would refuse to help petitioner because of self-incrimination, but at least, in fairness to petitioner this was a matter that should have been inquired into by the trial court before proceeding with the trial. If necessary, he should have declared a recess to give petitioner an opportunity to locate `Dick Davis,' if possible. At least, he should have offered to do so. Instead, he denied petitioner's motion for mistrial, and ordered the trial forthwith to proceed. We think in so doing he did so to the prejudice of the petitioner and that the conviction must be set aside for that reason." 246 So.2d at 776-777.
We also stated in Richardson that:
"... the violation of a rule of procedure prescribed by this Court does not call for a reversal of a conviction unless the record discloses that non-compliance with the rule resulted in prejudice or harm to the defendant... .
......
... The trial court has discretion to determine whether the non-compliance would result in harm or prejudice to the defendant, but the court's discretion can be properly exercised only after the court had made an adequate inquiry into all of the surrounding circumstances... .

*700 ... However, in those cases where the court determines that the State's noncompliance with the rule has not prejudiced the ability of the defendant to properly prepare for trial, we deem it essential that the circumstances establishing non-prejudice to the defendant affirmatively appear in the record...."
We are of the opinion that the law as we stated it in Richardson was adequately complied with in the instant case. True, the trial court and the District Court of Appeal, sub judice, reached a conclusion opposite to ours in Richardson, but we feel that there are material factual differences in the two cases which justify that result.
First of all, different rules of procedure were involved in the two cases. In the instant case, petitioner did not initiate any reciprocal exchange of witness lists as provided for in Rule 3.220(e); and it does not appear from the record that the State failed to disclose any relevant evidence which may have been beneficial to the petitioner. The State did fail to disclose the alleged participation in the crime by Hunnicut and Higgins, but this error was cured by the trial court's refusal to accept any evidence of such participation. That leaves only the State's failure to inform petitioner, until the day before the trial, that a co-defendant had been granted immunity one month prior. The record reveals, however, that the trial court made an adequate inquiry into all the circumstances surrounding this late disclosure, which the court in Richardson did not do. The trial court in the instant case found that the late compliance with the order granting the discovery motions did not result in prejudice or harm to the defendant, and the circumstances upon which he based this decision affirmatively appear in the record of the hearing held prior to the trial. From that record, it appears that the State inadvertently failed to disclose the immunity granted to White; that the disclosure was made as soon as the State became aware of its error; that petitioner's counsel had spoken with White the day before the trial, as well as on another occasion some two to three weeks prior to trial; and that the trial court allowed defense counsel to again interview White for at least thirty minutes prior to the State's presentation of its case and again, if it was desired, prior to White's testifying. Finally, the record in this case does not disclose that petitioner's counsel made any further motion for continuance or mistrial subsequent to his interview of White based on new information learned in that interview, as was the case in Richardson.
Therefore, the law as stated in Richardson was adequately applied in this case, and the different result reached in this case was justified by substantially different facts. There is thus no conflict.
Petitioner has also argued that this Court has jurisdiction, via certiorari, because the case affects a class of constitutional or state officers. Florida Constitution, Article V, Section 3(b)(3). This is the same basis upon which we reviewed Richardson. In Richardson, we held:
"The decision below reviewed the failure of the prosecuting attorney of the Criminal Court of Record of Hillsborough County to comply with the discovery requirements of the Rule in question, and the effect of such failure upon the validity of the trial in which the petitioner was convicted. In doing so it also reviewed the exercise of the trial court's discretion in refusing to grant petitioner's motion for mistrial based upon the failure of the prosecuting attorney to disclose the name of a witness who, the petitioner claimed, had knowledge of facts `relevant to the offense charged' and to the defense of the petitioner, and whose name was required, in the view of the petitioner, to be furnished him by the express provision of the Rule. Thus the decision of the District Court which holds that non-compliance with the discovery requirements of the Rule does not *701 ipso facto constitute ground for reversal of a conviction even though it is made to appear that the Rule has not been strictly complied with, and that such reversal depends upon whether or not the person charged has been prejudiced by non-compliance, affects two classes of constitutional or state officers, viz, prosecuting officers and trial courts in the exercise of their respective powers and duties in the prosecution and trial of criminal cases.
It is true that the decision below was determinative only of the cause reviewed by the appellate court, but the ultimate effect of it affects all prosecuting attorneys and trial judges in the trial of criminal cases. This Court, in Florida State Board of Health v. Lewis, Fla., 149 So.2d 41, speaking of this particular provision of the Constitution, said:
`The obvious purpose of the subject constitutional provision was to authorize this Court to review decisions which, in the ultimate, would affect all constitutional or state officers exercising the same powers, even though only one of such officers might be involved in the particular litigation.'
To like effect is State v. Robinson, Fla., 132 So.2d 156.
The decision below in the ultimate affects all prosecuting attorneys insofar as it interprets their duties in connection with compliance with Rules of Criminal Procedure promulgated by this Court, and all trial judges when called upon to interpret the effects of non-compliance by such prosecuting attorneys. Its pronouncement presents to this Court the duty to determine if the District Court of Appeal has properly interpreted the respective duties, powers and obligations of such officers under such Rules, and particularly Rule 1.220."
This jurisdictional holding of Richardson, however, if literally followed, would mean that this Court had jurisdiction to review nearly all cases, both civil and criminal, because nearly all decisions which review the actions or rulings of trial judges impose upon other trial judges a requirement to follow the law as stated therein in similar situations. Likewise, any decision concerning the propriety of the actions of a prosecuting attorney imposes upon all prosecuting attorneys the duty to henceforth follow the law as therein decided. We are of the opinion that our jurisdictional holding in Richardson was, therefore, much too broad and inconsistent with the often-stated philosophy behind the formation of our District Courts of Appeal  that these courts are to be courts of final appellate jurisdiction except in a limited number of specific situations enumerated in the Constitution. We therefore recede from our jurisdictional holding in Richardson.
A decision which "affects a class of constitutional or state officers" must be one which does more than simply modify or construe or add to the case law which comprises much of the substantive and procedural law of this state. Such cases naturally affect all classes of constitutional or state officers, in that the members of these classes are bound by the law the same as any other citizen. To vest this Court with certiorari jurisdiction, a decision must directly and, in some way, exclusively affect the duties, powers, validity, formation, termination or regulation of a particular class of constitutional or state officers. This may be a decision in a case in which the class, or some of its members, is directly involved as a party. It may also be in a case in which no member of the class is a party if the decision generally affects the entire class in some way unrelated to the specific facts of that case.
In the instant case, no member of any class of constitutional or state officers was a party, and any decision as to possible non-compliance with discovery rules by the state attorney did not affect any class of constitutional or state officers in any *702 general way unrelated to the specific facts of this case. The decision affected only the rights of the parties directly involved and the body of our State law as it applies to each and every citizen alike.
Petitioner has also urged this Court that its certiorari jurisdiction attaches because the trial court's denial of his motion to dismiss the indictment, and the District Court's affirmance of that denial, affects a class of constitutional or state officers, to wit: the class of assistant state attorneys. The basis for the motion to dismiss was petitioner's contention that the indictment was not signed by a properly appointed assistant state attorney, as required by Rule 3.140(f), Florida Rules of Criminal Procedure. Fla. Stat. § 27.181(2), F.S.A. provides that no person appointed as assistant state attorney may perform the duties of that office until he takes and subscribes to a written oath and causes the same "to be recorded in the office of the Clerk of the Circuit of the county in which the appointing state attorney resides." The record of this case reveals that, as of the time he signed the indictment, assistant state attorney Jerry E. Stillson had failed to have recorded, as required by statute, his oath of office.
We make no decision as to the merits of this contention because, again, any decision on that issue made by the trial court or by the District Court in its per curiam affirmance does not affect a class of constitutional or state officers so as to invoke our jurisdiction. A decision on that issue affects only the substantive and procedural law regarding the sufficiency of indictments in general, the rights of petitioner, and the authority of one particular assistant state attorney in relation to the specific facts of this case. At most, any decision on this issue could be said to affect only a sub-class of a class of constitutional or state officers, specifically, those assistant state attorneys who have failed to record their oaths of office.
Therefore, having held that this Court does not have jurisdiction, on any basis, to review this case, the writ of certiorari heretofore issued is discharged as having been improvidently granted.
It is so ordered.
ADKINS, C.J., and ROBERTS, BOYD, McCAIN and DEKLE, JJ., concur.
ERVIN, J., concurs in part and dissents in part with opinion.
ERVIN, Justice (concurring in part and dissenting in part):
I agree to the majority opinion except the portion which recedes from the holding in Richardson v. State (Fla. 1971), 246 So.2d 771, relative this Court's jurisdiction to review by certiorari any decision of a district court of appeal that "affects a class of constitutional or state officers." This Court has the duty to see to it that the rules it promulgates are faithfully executed, otherwise they are vacuous gestures.
In a particularly aggravated case where it ostensibly appears that a constitutional or state officer has refused to comply with a rule of practice or procedure of this Court, we should not by the precedent herein render the Court impotent to review the case to determine if the officer's non-compliance as sanctioned below by the District Court has the effect as precedent of justifying all constitutional or state officers of the same class to likewise refuse to comply with the Court rules. This glossing over stance or abstinence from taking jurisdiction of a case ostensibly affecting in its overall application the general duties of a class of officers required by a rule of court is contrary not only to our review jurisdiction but to this Court's supervisory jurisdiction to administer the state court system which includes as prominent part, adoption of "rules for the practice and procedure in all courts." Section 2(a), Article V, State Constitution.
*703 In the recent case of State v. Lott, 286 So.2d 565 (Fla. Opinion filed December 5, 1973), we made it clear that such rules are binding and are not to be nullified by interpretation. However, if we emasculate our ability to enforce them, great opportunity is afforded public officers to nullify them by their administrative interpretations.
This Court should not seek out technical ways to establish threshold precedents to render itself impotent to the exercise of its constitutional review jurisdiction. Cases of grave importance arise from time to time which demand for the public good the review attention of this Court. It should not be self-shackled from hearing them.
This is yet another of a series of recent cases where this Court is establishing precedents withdrawing from the performance of its constitutional appellate jurisdiction.