962 So.2d 934 (2007)
Gordon JACOBS, Appellant,
v.
STATE of Florida, Appellee.
No. 4D04-3138.
District Court of Appeal of Florida, Fourth District.
July 11, 2007.
Rehearing Denied September 7, 2007.
*935 Randall Berman and Louis G. Carres, West Palm Beach, for appellant.
Bill McCollum, Attorney General, Tallahassee, and Don M. Rogers, Assistant Attorney General, West Palm Beach, for appellee.
HOROWITZ, ALFRED J., Associate Judge.
Gordon Jacobs appeals his judgment of conviction and sentence for manslaughter with a firearm. We reverse and remand for a new trial, finding that the trial court abused its discretion in excluding certain evidence proffered by the defendant, Mr. Jacobs.
On the night in question, Joan Jacobs, the victim in this case, placed a 911 telephone call from the residence she shared with her husband, Gordon Jacobs. During that telephone call, the victim, through her screams, stated that her husband had choked her and that she wanted him out of the house. The tape recording of that call, a subsequent call from the emergency operator to the residence, and a call placed by Mr. Jacobs to the emergency operator were placed in evidence and played for the jury. The victim, Joan Jacobs, was killed by a single gunshot several minutes after her 911 call.
The state filed an amended information charging Mr. Jacobs with second degree murder with a firearm in the death of his wife. The defendant relied on the defense of insanity. A significant issue for the defense was the truthfulness or falsity of the asserted assault by the defendant upon his wife as she claimed in her 911 call. The defense contended that the victim had lied in the 911 call about being choked and that the essence of the call was a ruse contrived by Joan Jacobs and her lover to position herself more favorably and gain an advantage in subsequent dissolution of marriage proceedings.
The insanity defense of the defendant was largely based upon expert testimony suggesting that Mr. Jacobs' mental health deteriorated over a period of time leading up to this day when he lost touch with reality upon discovering his wife screaming as she was making a bogus 911 call with allegations of physical abuse. Both the state and defense made the 911 call a focal point of their case.
The defendant tendered evidence of hundreds of telephone calls between Joan Jacobs and her lover during the three weeks prior to the shooting including a six-minute telephone call made minutes prior to the victim's 911 call. The defendant had telephone records available as well as an employee from the cellular telephone company standing by to verify the records. The defense further sought to introduce a handwritten promissory note (IOU) from the victim's lover to the victim which was written six days prior to the shooting. The *936 trial court refused to allow the defendant's daughter to testify to finding the IOU, the effect of which was to preclude the jury from seeing, on the reverse side, and a written note signed by the lover to Joan Jacobs imploring her to hurry up, saying that he was tired of her wasting time and wanted her with him. Evidence of the victim and her lover recently opening a joint postal box and joint bank account was also excluded from evidence.
The trial court disallowed the introduction of all the evidence on the basis that it was not relevant to the issue of insanity and would otherwise be cumulative. The defense argued relevancy in that this evidence, combined with other evidence, would support the defense view that Gordon Jacobs did not choke or attack Joan Jacobs and that she feigned abuse. The defense position was that this evidence collectively would show the jury that Joan Jacobs was coached by her lover to fabricate a 911 call claiming abuse in order to get Mr. Jacobs out of the house. The defense argued all this evidence would be relevant as to whether or not Mr. Jacobs had a psychotic break with reality at the time of the shooting. Mr. Jacobs knew of his wife's affair and the defense expert considered this in arriving at the conclusion that Jacobs was legally insane at the time of the shooting.
Section 90.401, Florida Statutes, provides "relevant evidence is evidence tending to prove or disprove a material fact." Generally, a trial court is granted broad discretion in determining the relevance of evidence and such a determination will not be disturbed absent an abuse of discretion. Heath v. State, 648 So.2d 660, 664 (Fla.1994). The jury in this case was entitled to hear this evidence as it helped put the defense theory of the case in a proper context. The evidence sought to be introduced was neither cumulative nor remote in time to the shooting. The question of what is relevant to show a reasonable doubt may present different consideration than the question of what is relevant to show the commission of the crime itself. If there is any possibility of a tendering of evidence to create a reasonable doubt, the rules of evidence are usually construed to allow for it's admissibility. Vannier v. State, 714 So.2d 470 (Fla. 4th DCA 1998); see also Rivera v. State, 561 So.2d 536, 539 (Fla.1990). This evidence would have put in context for the jury the circumstances surrounding the defendant's state of mind when he came into contact with the victim at the time of the shooting. Bryan v. State, 533 So.2d 744 (Fla.1988). Regardless of how the trial court may view the evidence, it should be admitted as relevant if it tends to prove or support the theory of defense. Dean v. State, 916 So.2d 962 (Fla. 4th DCA 2005).
The state has not demonstrated how the exclusion of this evidence could be deemed "harmless error." This excluded evidence was central to the defendant's theory of his insanity defense. We therefore reverse the defendant's conviction and remand for a new trial.
GUNTHER and FARMER, JJ., concur.