976 So.2d 670 (2008)
D.M.L., Appellant,
v.
STATE of Florida, Appellee.
No. 2D06-5609.
District Court of Appeal of Florida, Second District.
March 19, 2008.
*672 James Marion Moorman, Public Defender, and Steven L. Bolotin, Assistant Public Defender, Bartow, for Appellant.
Bill McCollum, Attorney General, Tallahassee, and Cerese Crawford Taylor, Assistant Attorney General, Tampa, for Appellee.
CANADY, Judge.
D.M.L. appeals an order of the trial court finding him guilty of criminal mischief. On appeal, D.M.L. challenges various evidentiary rulings of the trial court. We reverse and remand for a new adjudicatory hearing.

I. Background

D.M.L. was charged with criminal mischief for causing damage to a truck driven by an acquaintance named Cory. At the adjudicatory hearing, Cory and his girlfriend, Brianna, testified that there was bad blood between Cory and D.M.L. and that D.M.L. intentionally caused damage to the truck with his skateboard. D.M.L. testified that Cory tried to hit him with a baseball bat and that D.M.L. attempted to defend himself by holding up his skateboard. According to D.M.L., the baseball bat swung by Cory knocked D.M.L.'s skateboard into the truck, causing the damage. D.M.L.'s girlfriend at the time of the offense, Melody, testified for the defense, but she was prevented from testifying regarding a phone call between Melody and Brianna on the day of the offense. On rebuttal, the State called Melody, who testified that D.M.L. asked her to lie and say that Cory tried to hit him with a bat. On cross-examination of Melody, the trial court precluded the defense from impeaching Melody with a prior inconsistent statement.
At the conclusion of the hearing, the trial court found that D.M.L.'s defense was not credible and that the State's witnesses were credible. The trial court found D.M.L. guilty of criminal mischief, withheld adjudication, and placed him on probation.

II. Analysis

A. Self-Defense

D.M.L. argues as a threshold matter that the trial court improperly excluded evidence on the basis that D.M.L. could not assert a defense of self-defense to the offense of criminal mischief.
Section 776.012, Florida Statutes (2006), provides that "[a] person is justified in using force, except deadly force, against another when and to the extent that the *673 person reasonably believes that such conduct is necessary to defend himself or herself or another against the other's imminent use of unlawful force." As D.M.L. argues, the statute does not limit this defense to certain offenses. It does not prohibit the use of this defense against property crimes. See, e.g., Bevan v. State, 908 So.2d 524 (Fla. 2d DCA 2005) (implicitly holding that self-defense applies to a criminal mischief charge by reversing convictions for criminal mischief and assault and remanding for new trial because circular self-defense instruction was given); State v. Arth, 121 Wash.App. 205, 87 P.3d 1206, 1209 (2004) ("[S]elf-defense may be available to a person charged with malicious mischief when the damage arises out of the accused's use of force against another."); Boget v. State, 74 S.W.3d 23, 31 (Tex.Crim. App.2002) (holding that self-defense "is available in a prosecution for criminal mischief where the mischief arises out of the accused's use of force against another").
According to D.M.L., he was using force in self-defense against Cory when Cory swung the bat at him and that is when the damage to the truck occurred. The trial court erred to the extent that it based its evidentiary rulings  which are further discussed below  on the view that D.M.L. could not assert a defense of self-defense in these circumstances.

B. The Relevance of Melody's Testimony for the Defense

D.M.L. also argues that the trial court erroneously excluded Melody's testimony for the defense that she was on the phone with Brianna right around the time of the offense and heard Cory state in the background, "There he is," immediately before the call was disconnected. D.M.L. claims that this testimony  which was not inadmissible hearsay  would have shown that Cory was actively looking for D.M.L. Cory had testified that he came across D.M.L. after school but that it was not a planned meeting. However, he admitted that he wanted to confront D.M.L. because they had been angry with each other earlier that day. Cory also admitted that he had a baseball bat in his truck with him. Brianna testified that Cory reached for his bat as he was getting out of the truck but that she grabbed it from him. D.M.L. contended that Cory was looking to fight with D.M.L. that afternoon. D.M.L. testified that he was riding his skateboard when Cory pulled into the parking lot, slamming his brakes and screeching his tires. D.M.L. further testified that Cory grabbed a bat from his truck and went after D.M.L. with the bat.
D.M.L. also asserts that evidence of Melody's phone conversation with Brianna would have cast doubt on Brianna's credibility because Brianna had denied that the phone conversation occurred.
"A trial court has wide discretion in areas concerning the admissibility of evidence, and such rulings will not be disturbed absent an abuse of discretion. A court's discretion is limited, however, by the rules of evidence." Hinojosa v. State, 857 So.2d 308, 309 (Fla. 2d DCA 2003) (citation omitted).
The trial court excluded all of Melody's testimony regarding her phone call with Brianna on the basis that it was not relevant. However, it is clear that Melody's testimony regarding the phone call with Brianna was relevant because it was "evidence tending to prove or disprove a material fact." § 90.401, Fla. Stat. (2006). The phone call occurred right around the same time as the charged offense, and Brianna, one of the State's key witnesses, had denied talking to Melody on the phone that day. The trial court placed great weight on Brianna's testimony in making its finding of guilt, and Melody's testimony regarding her phone conversation with Brianna *674 would have cast doubt on Brianna's credibility. See § 90.608(5), Fla. Stat. (2006) (providing that the credibility of a witness may be attacked with "[p]roof by other witnesses that material facts are not as testified to by the witness being impeached"). Melody's testimony would have also supported D.M.L.'s defense that Cory instigated the altercation that resulted in damage to Cory's truck. See Jacobs v. State, 962 So.2d 934, 936 (Fla. 4th DCA 2007) ("If there is any possibility of a tendering of evidence to create a reasonable doubt, the rules of evidence are usually construed to allow for it's [sic] admissibility. . . . Regardless of how the trial court may view the evidence, it should be admitted as relevant if it tends to prove or support the theory of defense." (citations omitted)).
Melody's testimony regarding the statement made by Cory  "There he is"  was not offered to prove the truth of the matter asserted, i.e., that D.M.L. was there. Instead, it was offered to prove Cory's state of mind, i.e., that he was looking for D.M.L., or to prove or explain Cory's subsequent act of swinging the bat at D.M.L. See § 90.803(3) (providing that a hearsay exception exists when "[a] statement of the declarant's then-existing state of mind" is offered to "[p]rove the declarant's state of mind, emotion, or physical sensation at that time or at any other time when such state is an issue in the action" or to "[p]rove or explain acts of subsequent conduct of the declarant"); Everett v. State, 801 So.2d 189, 191 (Fla. 4th DCA 2001) (holding that an out-of-court statement "may be admissible to prove a variety of issues besides the truth of the matter, such as the declarant's state of mind").
Because Melody's testimony regarding the phone call was relevant to D.M.L.'s defense and Brianna's credibility and because it was admissible pursuant to a hearsay exception, the trial court abused its discretion in excluding it.

C. The Impeachment of Melody's Rebuttal Testimony for the State

D.M.L. further claims that the trial court should have allowed him to question Melody about a prior statement that was inconsistent with her trial testimony that D.M.L. had asked her to lie for him during trial. D.M.L. claims that the trial court mistakenly believed that defense counsel could not confront the witness with her prior statement. He also argues that the trial court erred in excluding the prior inconsistent statement as a sanction for a discovery violation without first conducting a Richardson[1] hearing.
When the State called Melody as a rebuttal witness, she testified on direct examination that D.M.L. asked her to lie and say that Cory had gone to hit him with a bat and that Cory hit the skateboard with the bat causing the skateboard to hit the side of Cory's truck. On cross-examination, defense counsel asked if Melody had told the defense investigator that she believed D.M.L. wanted her to lie for him. The State objected on the basis that they never received the evidence in discovery.
Defense counsel argued that Melody's statement to the investigator was work product, and the trial court stated that defense counsel should have brought in her investigator to testify. Defense counsel argued that she could impeach Melody with her own statement and that she was trying to get out Melody's "prior inconsistent *675 statement." The trial court then sustained the State's objection to the impeachment evidence. In doing so, the trial court precluded the defense from proffering the prior inconsistent statement which it sought to use to impeach Melody.
First, the trial court erroneously excluded Melody's prior inconsistent statement on the basis that it had not been disclosed to the State. While Melody's statement to the investigator may have been protected by the work product privilege, the privilege ceased to exist when the defense attempted to use the statement as impeachment evidence at trial. See Am. Motors Corp. v. Ellis, 403 So.2d 459, 463 (Fla. 5th DCA 1981) (relying on United States v. Nobles, 422 U.S. 225, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975)). However, the trial court could have allowed the State to review the statement, during a recess if necessary, since the work product privilege applied until the defense decided to use the privileged information at trial. See id.
Even if the use by the defense of Melody's statement to the investigator constituted a possible discovery violation, the trial court failed to conduct the required Richardson hearing. See State v. Eaton, 868 So.2d 650, 653 (Fla. 2d DCA 2004). "When the trial court learns of a possible discovery violation, it must conduct a hearing pursuant to Richardson v. State, 246 So.2d 771, 775 (Fla.1971)." Eaton, 868 So.2d at 653. The exclusion of evidence "as a sanction for a violation of the discovery rules . . . should only be imposed when there is no other adequate remedy." Grace v. State, 832 So.2d 224, 227 (Fla. 2d DCA 2002). The trial court's failure to conduct a Richardson hearing was not harmless error in this case because there is a reasonable possibility that D.M.L. was prejudiced by the improper exclusion of the impeachment evidence. See Johnson v. State, 728 So.2d 1204, 1205 (Fla. 3d DCA 1999) (holding that in cases where defense evidence has been erroneously excluded for alleged discovery violations, "the reviewing court must determine whether the erroneously excluded evidence could have had an effect on the jury favorable to the defendant[] or, in other words, could the improper exclusion have reasonably affected the outcome of the case"). Melody's direct rebuttal testimony was extremely harmful to D.M.L.'s defense, and the trial court gave weight to Melody's testimony.
Second, it is clear that the trial court misunderstood the proper method of impeaching a witness with a prior inconsistent statement.
Extrinsic evidence of a prior inconsistent statement by a witness is inadmissible unless the witness is first afforded an opportunity to explain or deny the prior statement and the opposing party is afforded an opportunity to interrogate the witness on it, or the interests of justice otherwise require. If a witness denies making or does not distinctly admit making the prior inconsistent statement, extrinsic evidence of such statement is admissible.
§ 90.614(2). "Prior to questioning a witness about the contents of a previous inconsistent statement, counsel must call to the witness's attention the time, place, and person to whom the statement was allegedly made." Pearce v. State, 880 So.2d 561, 569-70 (Fla.2004). "[I]f the witness admits making the prior statement, examining counsel may not offer any evidence to prove the statement was made," but if the witness does not distinctly admit making the prior statement, extrinsic evidence is admissible. Id. at 570. Defense counsel was correct when she argued that she must first confront Melody about the prior statement before introducing testimony from the defense investigator.
*676 It is not clear from the record what the prior inconsistent statement by Melody would have been because the trial court cut off defense counsel and ruled that defense counsel was not going to impeach Melody with her own statement. Therefore, any failure of D.M.L.'s counsel to proffer the prior inconsistent statement was caused by the trial court's erroneous refusal to permit anything other than the defense investigator's testimony. See Smith v. State, 594 So.2d 846, 848 (Fla. 2d DCA 1992) (holding that defense counsel's failure to proffer evidence did not prevent reversal because defense counsel attempted to proffer evidence but was cut off by trial judge); Kimble v. State, 537 So.2d 1094, 1096 (Fla. 2d DCA 1989) ("[T]he trial court prevented the appellant's attorney from actually confronting the witness with her prior inconsistent statement. Thus, any failure of the appellant's attorney to lay the proper predicate was caused by the trial court's refusal to permit it."); Charles W. Ehrhardt, Florida Evidence § 104.3, at 32 (2007) ("[I]f the court erroneously refuses to permit counsel to make an offer, the issue will be preserved for appeal.").

III. Conclusion

D.M.L. raises several other issues on appeal, which we conclude are without merit. Based on the errors discussed above, we reverse the juvenile court's finding of guilt and remand for a new adjudicatory hearing.
Reversed; remanded.
STRINGER and VILLANTI, JJ., Concur.
NOTES
[1] Richardson v. State, 246 So.2d 771 (Fla. 1971), receded from in part by Spradley v. State, 293 So.2d 697 (Fla. 1974).