DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**DEMETRIUS ELDER,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

Nos. 4D18-2891
and 4D18-2892

[May 27, 2020]

Consolidated appeals from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Ernest A. Kollra, Judge; L.T. Case Nos. 03-006938CF10E and 14-010348CF10A.

Carey Haughwout, Public Defender, and Benjamin Eisenberg, Assistant Public Defender, West Palm Beach, for appellant.

Ashley Moody, Attorney General, Tallahassee, and Jessenia J. Concepcion, Assistant Attorney General, West Palm Beach, for appellee.

GROSS, J.

The rejection of a proposed jury instruction and the exclusion of relevant evidence, both pertaining to the defense in this case, require that we reverse and remand for a new trial.

Appellant Demetrius Elder was charged by information with manslaughter with a deadly weapon for the stabbing death of the victim, Fakhradeen Muhammad Knight. His defense at trial was that he stabbed the victim in defense of his codefendant, Armando Baptista.

At the time of the manslaughter charge, Elder was on probation for twenty counts of grand theft. The probation was imposed as part of a 2006 sentence in which the trial court withheld adjudication on forty counts of grand theft and one count of petit theft. As to the grand theft counts, the trial court sentenced Elder to concurrent terms of five years of probation on twenty counts, followed by concurrent terms of five years of probation on the remaining twenty counts.

Following the victim's death, a probation officer filed a violation-of-probation affidavit, alleging that Elder violated his probation by, among other things, committing a homicide offense.

Although Elder did not testify at trial, his pretrial testimony from a Stand Your Ground hearing was played for the jury. The stabbing occurred in a Chevrolet Impala stopped at a stop sign. Elder testified that he was behind the wheel, experiencing a coughing fit caused by a serious medical condition. His codefendant sat in the front passenger seat. The victim walked to the passenger side of the car. One thing led to another and a tussle ensued. Both men ended up on the front seat of the Impala, with the victim on top. Elder got out of the car, walked around to the passenger side, and tried to pull the victim off the codefendant, without success.

According to Elder, the codefendant screamed that the victim was trying to kill him. Elder could not separate the two men. He saw a knife on the floorboard, picked it up, and stabbed the victim once in the back. The victim ultimately died from multiple stab wounds.

The State presented the eyewitness testimony of the victim's girlfriend, who gave a different version of the struggle in the Impala. The girlfriend testified that the victim was a passenger in her car. The Impala was in front of them and stopped at a stop sign for "a couple of minutes," even though the Impala "had plenty of opportunity to go." The victim approached the Impala. The codefendant got out of the car. A discussion ensued outside the car. When the victim attempted to shake hands with the codefendant, the codefendant attacked him. The victim then grabbed the codefendant in a "bear hug," and both men wound up inside the Impala.

Elder got out of the driver side of the Impala, came around behind the car, and told the girlfriend, "You better come get your man." The girlfriend went to the passenger side and tried to get the victim off the codefendant, but the victim was still holding the codefendant in a bear hug. Elder was standing behind the girlfriend. As the girlfriend was tugging at the back of the victim's shirt, the victim screamed, "He's got a f—ing knife." The girlfriend yelled at Elder to get the knife from the codefendant. He reached into the car and the codefendant handed him the knife. The girlfriend pulled the victim off the codefendant and saw that the victim was covered in blood. The girlfriend pulled the victim's wrist and said, "Baby, come on, let's go." However, Elder and the codefendant "both start[ed] pounding him." The girlfriend held up her phone and said that she was calling 911.

At that point, Elder and the codefendant left. The girlfriend lifted the victim's shirt and saw multiple stab wounds. An ambulance took the victim to the hospital, where he later died.

The jury found Elder guilty of the lesser-included offense of culpable negligence, a misdemeanor. At the sentencing hearing, the trial court gave full and thoughtful consideration of an appropriate sentence. As to culpable negligence, the trial court sentenced Elder to time served. On the violation of probation, the prosecutor asked the judge to sentence Elder to five years on all twenty counts, for a total of 100 years in prison. The court declined to sentence Elder to prison, terminated Elder's probation unsuccessfully, and adjudicated him guilty on twenty counts of grand theft and one count of petit theft.

Elder raises five points on appeal. We affirm on two without comment. We reverse for a new trial on the culpable negligence charge and for a new hearing on the violation of probation.

*The trial court abused its discretion in denying Elder's request for a jury instruction on the presumption of fear for justifiable use of deadly force, as established by section 776.013(1), Florida Statutes (2013)*

During the charge conference, defense counsel requested that the court give the standard jury instruction modeled on section 776.013, Florida Statutes, which creates a presumption of reasonable fear of death or great bodily harm if "the person against whom the defensive force was used" was in the process of unlawfully and forcefully entering an occupied vehicle or had already done so.

The standard jury instruction on the presumption of reasonable fear states:

> (Defendant) is presumed to have held a reasonable fear of imminent peril of death or great bodily harm to [himself] [herself] [another] when [using] [or] [threatening to use] defensive force that was intended or likely to cause death or great bodily harm to another if:
>
> > a. The person against whom the defensive force was [used] [or] [threatened to be used] **was in the process of unlawfully and forcefully entering, or had unlawfully and forcibly entered, a dwelling, residence, or occupied vehicle,** or if that person had removed or was attempting to remove another against

- 3 -

that person's will from the dwelling, residence, or occupied vehicle; and

b. (Defendant) knew or **had reason to believe that an unlawful and forcible entry or unlawful and forcible act was occurring or had** occurred.

Fla. Std. Jury Instr. (Crim.) 3.6(f) (emphasis added); *see also* § 776.013(1), Fla. Stat. (2013).[1]

*Discussion*

"We review a trial court's decision to give or withhold a proposed jury instruction for an abuse of discretion." *Calkins v. State,* 170 So. 3d 888, 889 (Fla. 4th DCA 2015).

A trial court's failure to give a requested instruction constitutes reversible error if: (1) the requested instruction accurately states the law; (2) the facts of the case support the instruction; and (3) the instruction is necessary to allow the jury to properly resolve all issues in the case. *Campbell v. State,* 812 So. 2d 540, 544 (Fla. 4th DCA 2002).

"A criminal defendant is entitled to have the jury instructed on the law applicable to his or her theory of defense where there is *any* evidence to support it, no matter how weak or flimsy." *Gregory v. State*, 937 So. 2d 180, 182 (Fla. 4th DCA 2006). "In deciding whether to give a requested charge, a trial judge may not weigh the evidence before him in determining whether the instruction is appropriate; it is enough if the defense is *suggested* by the evidence presented." *Chavers v. State*, 901 So. 2d 409, 410 (Fla. 1st DCA 2005) (internal quotation marks omitted). "However disdainful the trial judge may feel about the merits of the defense from a factual standpoint is beside the point." *Johnson v. State*, 789 So. 2d 1071, 1072 (Fla. 1st DCA 2001).

Here, the trial court reversibly erred in refusing to give the instruction on the presumption of reasonable fear, because Elder's testimony and statement to police provided evidence upon which a jury could have found that the victim "had unlawfully and forcibly entered" Elder's occupied

---

[1] The 2013 version of the statute was still in effect at the time of the incident in April 2014. The statute was subsequently amended to include language regarding "threatening to use" defensive force. *See* § 776.013(1), Fla. Stat. (2014). However, the "threatening to use" language would not have applied to the facts of this case in any event.

vehicle. For example, Elder claimed that when he was coughing and trying to breathe at the stop sign, he felt his car move and heard the codefendant ask, "D, you know this n—er?" Although Elder said he did not see who opened the door, he claimed that he looked over and saw the victim on top of the codefendant in the passenger seat, physically striking him. Elder also claimed that the codefendant had not gotten out of the car. Regardless of whether the victim or the codefendant opened the door, Elder's statement and testimony would support a jury finding that the victim was the aggressor and had "unlawfully and forcibly" entered the Impala to attack the codefendant, who was still seated in the car.

Elder's version of events supported the conclusion that, even though he did not know how the victim entered the vehicle, he "had *reason to believe* that an unlawful and forcible entry or unlawful and forcible act was occurring or had occurred." Fla. Std. Jury Instr. (Crim.) 3.6(f) (emphasis added).

Because there was some evidence—even if weak or flimsy—to support the defense that the victim had unlawfully and forcibly entered Elder's vehicle, the defense was entitled to a jury instruction on the presumption of reasonable fear. The requested instruction was an accurate statement of the law, was supported by some evidence, and was necessary to allow the jury to resolve all issues in the case. The jury needed to understand that the law presumed Elder to have held a reasonable fear of imminent peril of death or great bodily harm to himself or the codefendant if the jury believed (1) that the victim had unlawfully and forcibly entered the occupied vehicle and (2) that Elder had "reason to believe" such an entry had occurred. The general instruction on the justifiable use of deadly force did not inform the jury of this presumption.

The error in denying this instruction was not harmless. This was a close case, as evidenced by Elder's conviction of culpable negligence, a lesser-included offense. Thus, there is a reasonable possibility that the error in denying the instruction affected the verdict. *See State v. DiGuilio*, 491 So. 2d 1129, 1135 (Fla. 1986).

*The trial court abused its discretion in barring Elder from presenting testimony from a medical doctor regarding Elder's diagnosis of myasthenia gravis*

As alluded to above, Elder testified during his Stand Your Ground hearing that he has a disease called myasthenia gravis, which affects his muscles and makes it hard for him to breathe. According to Elder, when the Impala reached the stop sign where the fight ultimately occurred, he

stopped to cough and catch his breath. He opened the door and stuck his head outside for about five or ten seconds to get some fresh air.

Prior to trial, Elder moved for leave to present the testimony of a medical doctor that he "suffers from myasthenia gravis, a chronic autoimmune neuromuscular disease that causes weakness in the skeletal muscles, which are responsible for breathing and moving parts of the body, including the arms and legs." The defense argued that the proffered testimony was "relevant and admissible to rebut the State's suggestion that Elder and [the codefendant] were waiting at the stop sign for [the victim] in order to attack him, and also to rebut the testimony of [the girlfriend] regarding the punching and kicking after the fact."

The court addressed the issue at trial. Because the State "didn't put any evidence on that the reason for the stop was to cause the fight," the trial court ruled that it would not allow the doctor's testimony concerning Elder's medical condition. The trial court reasoned that the defense had "nothing to rebut," so the proffered testimony "wouldn't be relevant."

*Discussion*

"Relevant evidence is evidence tending to prove or disprove a material fact." § 90.401, Fla. Stat. (2018). By contrast, "[w]hen evidence is offered to prove a fact which is not a matter in issue, it is said to be immaterial." Charles W. Ehrhardt, *Florida Evidence*, § 401.1 (2019 ed.). "A trial court has broad discretion in determining the relevance of evidence and such a determination will not be disturbed absent an abuse of discretion." *Sexton v. State*, 697 So. 2d 833, 837 (Fla. 1997).

Evidence may be relevant to "put the defense theory of the case in a proper context." *Jacobs v. State*, 962 So. 2d 934, 936 (Fla. 4th DCA 2007). "[W]here evidence tends in any way, even indirectly, to establish a reasonable doubt of [the] defendant's guilt, it is error to deny its admission." *Rivera v. State*, 561 So. 2d 536, 539 (Fla. 1990). Put differently, "[i]f there is any possibility of a tendency of evidence to create a reasonable doubt, the rules of evidence are usually construed to allow for its admissibility." *Vannier v. State*, 714 So. 2d 470, 472 (Fla. 4th DCA 1998).

Here, evidence of Elder's diagnosis was relevant to prove a material fact—whether Elder's physical condition made it unlikely that he would pursue activity requiring violent physical exertion. Also, his diagnosis was relevant to put the defense theory of the case in proper context by showing that he stopped his car at the stop sign due to a coughing fit caused by

his medical condition, not to lie in wait for the victim. This evidence had some probative value in establishing the identity of the initial aggressor in the confrontation.

The error in excluding the medical doctor's testimony was not harmless. Although Elder described his medical condition, the jury might have given it little weight because he was the defendant on trial, not a medical expert. Myasthenia gravis is a serious condition akin to the more well-known "Lou Gehrig's Disease." The jury could have considered the doctor's testimony significant in evaluating the testimony of the victim's girlfriend, who said that Elder and his codefendant pounded on the victim outside of the car after the stabbing.

*Elder is not entitled to a new Stand Your Ground hearing*

In 2014, when Elder encountered the victim, a defendant had the burden to prove Stand Your Ground immunity by a preponderance of the evidence. *See Bretherick v. State*, 170 So. 3d 766, 779 (Fla. 2015).

In 2017, before Elder's Stand Your Ground immunity hearing took place, the legislature amended section 776.032, Florida Statutes, by adding subsection (4), which altered the burden of proof at Stand Your Ground immunity hearings. *See* Ch. 2017-72, § 1, Laws of Fla.

Section 776.032(4) now provides that "once a prima facie claim of self-defense immunity from criminal prosecution has been raised by the defendant at a pretrial immunity hearing, the burden of proof by clear and convincing evidence" is on the State. § 776.032(4), Fla. Stat. (2017).

After hearing all the evidence at the pretrial Stand Your Ground hearing, the trial court denied the motion to dismiss. The court ruled that Elder "did not meet his burden by the greater weight or preponderance of credible evidence." The trial court found that the victim's girlfriend's testimony was more believable than that of Elder.

Significantly for this case, the court further ruled that even if the most recent version of section 776.032(4) were "retroactively applied to put the burden on the State," the State still met its burden.

Elder argues that because he improperly bore the burden of proof at his pretrial Stand Your Ground hearing, we should remand for a second hearing where the State would bear that burden of proof.

*Discussion*

Recently, in *Love v. State*, 286 So. 3d 177, 190 (Fla. 2019), the Florida Supreme Court held that "[s]ection 776.032(4) is a procedural change in the law and applies to all Stand Your Ground immunity hearings conducted on or after the statute's effective date."

Under *Love*, section 776.032(4) should have been applied to Elder's Stand Your Ground immunity hearing, which was conducted after the statute's effective date. However, the trial court made an express finding that even if the new statute were applied to this case, the State met its burden.

Under similar circumstances, two of our sister courts have held that where the trial court has ruled that the defendant was not entitled to immunity regardless of which party had the burden of proof, the defendant is not entitled to a new Stand Your Ground hearing. *See Maddox v. State*, 288 So. 3d 1223, 1224 (Fla. 5th DCA 2019) (holding that where the trial court placed the burden of proof on the defendant at the Stand Your Ground hearing but nonetheless ruled that the State presented clear and convincing evidence that the defendant was not entitled to immunity, "no useful purpose would be served in requiring a new Stand Your Ground hearing because his claim failed under either burden of proof"); *Mency v. State*, 44 Fla. L. Weekly D1537, 2019 WL 2439558, at *1 (Fla. 1st DCA June 12, 2019) ("[T]he trial court stated that regardless of who had the burden, the appellant was not entitled to immunity. This ruling implies that the trial court made a ruling under both standards. Because the trial court applied the correct standard, the trial court did not err.").

Elder disagrees with these decisions and argues that the remedy should be a new Stand Your Ground hearing because the burden of proof changes the entire complexion of the hearing. He relies upon *Martin v. State*, 43 Fla. L. Weekly D1016, 2018 WL 2074171 (Fla. 2d DCA May 4, 2018), *disapproved of on other grounds by Love v. State*, 286 So. 3d 177 (Fla. 2019), which held that when a trial court improperly places the burden of proof on the defendant at a Stand Your Ground hearing, the remedy is to reverse for a new hearing, rather than to reverse for reconsideration of the motion to dismiss based on the evidence presented at the original hearing.

We conclude that *Martin* is not controlling because it did not address a situation where a trial court's initial Stand Your Ground ruling encompassed both standards of proof. We agree with the reasoning of *Mency* and *Maddox*. We therefore decline to order a new Stand Your Ground hearing.

*Affirmed in part, reversed in part and remanded to the circuit court for both a new trial and a new violation of probation hearing.*

GERBER and FORST, JJ., concur.

\*          \*          \*

**Not final until disposition of timely filed motion for rehearing.**